## John Friedland and others v. George McNeil.

*Building contracts: Superintendent: Contractor: Implied promise.* The nature of the duties of a building superintendent are such that it would be improper that he should be appointed or controlled by the contractor; and the two positions being inconsistent, a contract will not be implied for the employment of the contractor as superintendent of his own work.

*Evidence: Presumptions.* It will not be presumed there was error in admitting evidence of the value of the contractor's services as superintendent in his action against his employers, where the record does not show that he may not have been employed as superintendent over the work of others upon the building, his contract being for the mason work only. All reasonable intendments are to be made in support of the rulings brought up for review.

*Building contracts: Damages: Delay: Agreed remedy.* Whether a provision in a building contract authorizing the employers, after notice to the contractor, to take the work into their own hands and complete it at the contractor's expense if he failed to proceed with due diligence, is not to be regarded when acted upon as a remedy agreed upon as a substitute for future damages:—*Quære?*

---

FRIEDLAND *v.* MCNEIL.

*Building contract: Church: Mason work: Delay: Loss of pew rents.* Delay in the completion of a contract to do only the mason work of a church, will not authorize the recovery of the loss of pew rents as damages, at least not in the absence of special averments; such loss cannot be said to be the necessary, natural or probable result of the delay, since the completion of the contract does not put the building in condition for the renting of pews.

*Evidence: Contract: Damages: Eight per cent. mortgage.* Where a contractor was to receive as part payment an eight per cent. mortgage running six years, an offer to show in defense to his action, that by reason of his failure to complete the contract in season the employers were compelled to borrow money at a higher rate to complete it themselves, is not sufficiently specific, in the absence of any proposal to show that the current rates for six year loans were higher than eight per cent., to warrant its reception as a basis for estimating damages.

*Employers: Taking charge of work: Delay: Damages: Eight per cent. mortgage.* It seems that the employers, by taking the work into their own hands under the proviso of the contract authorizing them so to do in case of unreasonable delay, thereby waived all claim to damages for being deprived of any benefits accruing to them from the stipulation regarding the mortgage.

*Building contracts: Defaults: Damages: Cost of completion: Evidence.* Where the employers under a building contract have, by virtue of a proviso in their contract, taken the work into their own hands, and completed it at the expense of the contractor, they are entitled to show in defense to the contractor's action, what the completion of the work cost them, provided they paid only the current rates; and the error committed in excluding evidence of the actual cost at current rates will not be cured by admitting afterwards the opinions of experts as to the probable cost.

*Heard October 21 and 22. Decided November 2.*

Error to Superior Court of Detroit.

This was an action brought by McNeil against the rector and trustees of St. Joseph's Church of Detroit upon a written contract for doing all the mason work, and furnishing the materials therefor, upon a church building, to recover a balance of the contract price, and for extra work. McNeil recovered judgment and the defendants brought error.

*Maybury & Conely, John Atkinson* and *Alfred Russell,* for plaintiffs in error, cited: *Clark v. Moore, 3 Mich., 55; Burrill v. Salt Co., 14 Mich., 34; Platt v. Brand, 26 Mich., 173.*

*Alfred E. Hawes, J. Logan Chipman* and *C. I. Walker,* for defendant in error, cited: *Clark v. Moore, 3 Mich., 60;*

33 MICH.—6.

FRIEDLAND *v.* MCNEIL.

*Sedgwick on Damages, 66–7, 79–85; 2 Greenleaf Ev., 261; Allen v. McKibbin, 5 Mich., 453.*

COOLEY, J:

It is not very clear from this record that the court erred in admitting evidence of the value of McNeil's services as superintendent.    Undoubtedly it was the duty of the parties who employed him to furnish and pay the superintendent. This is not only the custom in such cases, but the nature of the duties to be performed by a superintendent are such that it would be highly improper that he should be appointed or controlled by the contractor.    He is to oversee the work of the contractor, and to exercise a *quasi* judicial authority in determining upon its suitableness and sufficiency under the contract; and this fact would seem to preclude all idea that he was to superintend for his employers his own work. The two positions of contractor and superintendent of the contractor's work are inconsistent, and it is no less than an absurdity to imply a contract on the part of the employers to pay him for accepting on their behalf his own work. Nor is it very manifest that, if the superintendency went no farther, the contractor would be put to any extra trouble. As contractor he must see that his own work is sufficient, and as superintendent he could do no more.    If, therefore, the builders left him to act as superintendent, while there might be a strong inference that they expected to confide in his judgment, discretion and fairness as to the character of the work and materials, it would be on a very violent presumption if it were to be assumed that they expected to pay him for superintending himself.

But it does not distinctly appear from the record that McNeil was not to superintend the work of others.    His contract was for mason work only, and it does not affirmatively appear that he superintended nothing else.    All reasonable intendments are to support the rulings below; if it were legally possible for the employers to make their con-

tractor superintendent, we must infer that the proper showing-
was made. There was certainly no difficulty in the way of
his being made the superintendent of the work of others,
and therefore no error in admitting evidence tending to show
an employment. Whether the evidence went far enough
to make out a case is another question, and one upon which
nothing in this record enables us to pass.

Complaint is made that the church trustees were not
allowed to show a loss of pew rents in consequence of the
contract not being completed in season. It may be ques-
tionable whether the provision in the contract, authorizing
them after three days' notice to take the work into their
own hands and complete it at the contractor's expense if he
failed to proceed with due diligence, is not to be regarded
when acted upon as a remedy agreed upon as a substitute
for future damages (*Clark v. Babcock, 23 Mich., 164*);
and if not, whether the extension of the time for completion
by consent or acquiescence was not a waiver. The question
is not very material here, because a further difficulty is
insuperable. The contract upon which suit was brought
was not one the completion of which was to put the build-
ing in condition for the renting of pews. A large amount
of other work would still remain to be done, and large
expenditures to be made, with which this contractor would
have no concern whatever; and the building might never
be put in condition for the renting of pews and yet he be
in no way responsible. It can never be said that the loss
of rents is a necessary, natural or probable result of a par-
ticular default, when had no default occurred, the necessary
conditions to rent would still be wanting, and might never
be supplied. Any claim against this contractor for damages
resulting from loss of rents must assume that the trustees
had the ability and inclination to proceed at once to com-
plete the church, and were only delayed by the contractor's
default; but damages so remote and contingent would
require to be specially claimed by the pleadings, if recover-

able at all, which is doubtful.—See *Michigan Central R. R. Co. v. Burrows, supra, p. 6*.

The offer to show damages by reason of the trustees being deprived of the privilege of giving to McNeil a fifteen thousand dollar, six year, eight per cent. mortgage for part of his demand, was not sufficiently specific to warrant the proffered evidence, if no other objection existed. The offer was to show that by reason of McNeil's failure to complete the contract in season, they were compelled to borrow money at a higher rate to complete it themselves. It was not proposed to show that the current rates for six year loans were higher than eight per cent., nor that the loans made by the trustees were any thing more than mere temporary loans. If by reason of McNeil's default they lose the benefit of an eight per cent. credit for six years, it does not follow that they suffer damages therefrom, unless the current rates of interest are such that money cannot be borrowed on that time without paying more. This the defendants did not offer to show. A temporary loan can afford no proper standard of comparison for a loan of six years.

But it may be questionable whether all rights under the stipulation regarding the mortgage were not gone when the trustees took the work into their own hands. Where the contractor completes the work, there is no difficulty in enforcing such a stipulation, since if he refuses the mortgage, he is precluded from recovering the compensation until the credit to be given by the mortgage has expired. But when the employers take the work into their own hands, the stipulation becomes incapable of specific enforcement, because they then do the work at his expense, and are likely to be his creditors instead of his debtors. Nothing then remains but the question of damages; and these would be damages not for a refusal to take a mortgage as agreed, but for neglect to complete the work so as to have earned the mortgage. The loss of the opportunity to give a mortgage would

consequently be only one of the elements which go to make up damages from a failure to perform the work in season. There are serious difficulties in the way of holding that damages can legally be predicated of the loss of an opportunity to give a mortgage at a rate of interest exceeding that fixed by law, and which, as a legal presumption, must usually be deemed adequate compensation for the use of money; difficulties so troublesome that when suggested by a contract any alternative which the contract presents may well be supposed to have been provided as a substitute.

Now this contract provides in substance that when the contractor completes the work he shall take a mortgage for fifteen thousand dollars in part payment.    It also provides that if he does not complete it, the trustees may do so at his cost.    Is it a legitimate inference from these stipulations that it was contemplated by the parties that a failure on the part of the contractor to complete the work should subject him to damages for not putting himself in position to be required to receive the mortgage in part payment?    This does not appear to us so simple a question as it was assumed to be by counsel for the trustees.

There can be no legal presumption that it is to one's advantage to give a mortgage at eight per centum interest. On the contrary, when a stipulation for such a mortgage appears in a contract, the presumption is reasonable, where nothing appears in the contract to qualify it, that it was for the benefit of the party who was to receive the mortgage, rather than of the one who was to give it.    And this presumption would be stronger in proportion to the time the mortgage was to run; because in the money market, if the security is ample, the rates are usually diminished as the time is increased.    It could not, therefore, be held as a presumption either of law or fact that the trustees would be damnified by losing the opportunity to give such a mortgage to the contractor, or that they would lose any thing by taking the work into their own hands at the contractor's expense. The giving of the mortgage might prove to be for his benefit

rather than for theirs; this would depend upon contingencies not to be fully foreseen when the contract was made; and these contingencies would strengthen the probabilities favoring a construction of the contract that if the trustees took the work out of the contractor's hands this stipulation would be waived. We are inclined to regard this as the legal construction.

The fourth exception taken by the plaintiffs in error we have not been able to overcome. They offered to show what the finishing of the work cost them after they took it into their hands, and that they paid the current rates. This offer was excluded. It is true they were permitted afterwards to put in the testimony of experts on the same point, but this did not cure the error. If the excluded evidence were cumulative merely, it should have been received; but it was really something more; it was or should have been more satisfactory and conclusive upon the question of cost than any mere opinions. No opinions can be so satisfactory or conclusive as the actual test, if fairly and honestly carried out. It is true, as was urged on the argument, that the cost to defendants was not the proper test of what they were to charge the contractor; but they offered to show that they paid only the current rates, and this offer made the evidence admissible. We regret the necessity for sending the case back for a new trial, but there seems to be no alternative. It will be so ordered.

The other Justices concurred.