JOHNSON v. O'NEILL.

CONTRACTS — ARCHITECTS — BUILDING AND CONSTRUCTION AGREE-
MENTS—EVIDENCE.

As evidence that plaintiff, an architect, suing to recover for services performed, should be charged with damages for negligent performance of his duty to superintend the construction of the building in question, his report to his employer showing a large number of defects in the completed structure was competent.

Error to Wayne; Murfin, J. Submitted April 12, 1912. (Docket No. 29.) Decided October 7, 1912.

Assumpsit by Arland W. Johnson against John G.

O'Neill and another for services performed as defendants'
architect. Judgment for plaintiff. Defendants bring
error.   Reversed.

*Wm. G. Fitzpatrick* and *M. Hubert O'Brien*, for
appellants.

*J. Emmet Sullivan* and *A. C. Bishop* (*L. W. Mor-
gan*, of counsel), for appellee.

MOORE, C. J.   This suit is brought by the plaintiff to
recover a balance claimed to be due for the services as
architect of plaintiff in the preparation of plans and speci-
fications for a building at Port Huron, Mich., and in the
supervision of its construction, together with certain ex-
tras.   The defendants' plea is the general issue with no-
tice of set-off and recoupment, which asserts (1) part pay-
ment of the contract price by cash and credits; (2) a set-
off under the common counts consisting of the same items;
(3) damages due to the negligence of plaintiff in prepar-
ing the drawings, plans, and specifications, in letting con-
tracts and superintendence, resulting in delay, improper
construction, and acceptance of defective materials; and
(4) plaintiff's failure to complete his contract, necessitat-
ing its completion by defendants at their own expense.
The trial resulted in a verdict for plaintiff for $797.36,
and from the judgment on this verdict the defendants
have sued out their writ of error.

There are a great many assignments of error argued,
but it was stated on the oral argument that the import-
ant question in the case was whether the court erred in
excluding a report made by the plaintiff to the defendants.
The defendants made a contract with one Herman for the
construction of the building.   This contract contained,
among others, the following provisions:

"(3) All the material furnished in the construction of
said building, and all workmanship connected therewith,
shall be agreeable to and in strict conformity to the draw-
ings and specifications made by Arland W. Johnson, archi-

tect, which are hereby referred to and made a part of this contract, with like effect as though attached hereto, all such materials and workmanship to be furnished, to be done to the entire satisfaction and subject to the approval, and under the direction of the said Arland W. Johnson, who shall have full power and authority to reject all materials and workmanship which in his judgment are not in full accordance with the said plans, specifications and detail drawings."

Paragraph 4 provides for payments to be made on the certificate of the architect—

"The final payment to be due and payable when said architect shall certify that said building is fully completed in accordance with the plans and specifications and to his satisfaction."

"(8) It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of said architect, and that his decision as to the true construction and meaning of the drawings and specifications, and his determination as to the quality and kind of material placed in said building as required by the specifications, shall be final and conclusive between the parties hereto.

"(9) It is also understood and agreed that such additional drawings and explanations as may be necessary to detail and illustrate the work to be done, are to be furnished by said architect.        *        *        *"

Paragraph 10 provides that the owner may require "any alterations of, deviations from, additions to, or omissions from said contract" during the progress of the work without injuriously affecting or avoiding the contract, but that the difference in price shall be added to or deducted from the amount of the contract by a fair and reasonable valuation to be determined by the written estimate of the architect. It then provides for arbitration in the event of dissatisfaction with the architect's estimate. It also provides that all extras to the contract must be covered by a written agreement signed by both the owner and the architect.

Paragraph 11 requires the builder to remove all condemned materials from the grounds and buildings within

24 hours after written notice from the architect, and, upon similar written notice, to take down all portions of the work which shall be deemed by the architect as unsound or improper or as in any way failing to conform to the drawings and specifications; and it requires the builder to make good all work damaged or destroyed thereby.

The specifications describe some of plaintiff's duties as follows:

"The work is to be done in a manner and of materials in every way acceptable to the architect, * * * and his decisions as to the character, fitness or unfitness, of the work or the material, is to be final and binding on all parties."

They also give plaintiff the right to require the prompt discharge of any subcontractor or employé, to order the removal from the building or premises of any material he may deem unsuitable, either worked or unworked, on the ground or set in place, and to make deductions in his estimate therefor, his decision being final and binding. He may retain faulty work or material and deduct the difference in value from the contract price, and in such case his decision shall be final and binding. It is expressly stipulated that "faulty work or material, if retained, will not be paid for in full."

The plaintiff was a witness in his own behalf. On the cross-examination he had testified to the number of visits he made to the building, and to the making of a final inspection in May, when the following occurred:

"The work was not satisfactory when I made that final inspection, and I did not accept the building.

"*Q.* In how many particulars was it not satisfactory?

"*A.* The report is the best evidence of that.

"*Q.* There are hundreds of items in that report, which are details in which the building as completed at that time did not comply with the plans and specifications, is that right?

"*A.* As built at that time. Exhibit 74 is signed by me, and is that report, which was made in triplicate.

172 MICH.—22.

It is one of the three which were made. It is as complete as was possible for me to make it, and everything in this report is true, as I see it.

"*Mr. O'Brien:* I offer this report in evidence.

"*Mr. Sullivan:* No objection.

"*The Court:* In spite of the fact that there is no objection, what is the purpose of that report, so far as the controversy between you gentlemen is concerned.

"*Mr. O'Brien:* We claim that Mr. Johnson is responsible for a great deal of work that he refused to accept, for the failure of it to comply with his plans.

"*The Court:* Does the report show these?

"*Mr. O'Brien:* It shows those items.

"*The Court:* Does the report show who is responsible for it?

"*Mr. O'Brien:* No.

"*The Court:* Then are we going in this controversy to inquire into every one of those details, and ask whether the fault was the contractor's or the architect's?

"*Mr. O'Brien:* We have selected a sufficient number of details on which we make that claim. We do not claim it in regard to all of them, of course.

"*The Court:* It seems to me each one of those details involves an entirely separate and distinct lawsuit, does it not? Take a concrete illustration. It is not in this case, but just to assume for the purpose of this inquiry that in this report there is a complaint that the roof is not properly on this building. The owner of the building has not yet paid the contractor for that roof. There is a question involved as to whether the fault is in the specifications, in the design or in the construction. It would require a lawsuit to determine that. If that item should appear in the report that the roof is not proper, are we going here in this lawsuit to try out the collateral lawsuit?

"*Mr. Fitzpatrick:* No.

"*The Court:* That is inevitably what it will lead to.

"*Mr. Fitzpatrick:* I think not, your honor. This report is offered in evidence as substantive proof in the way of admission by this man, that there were in that building, that he was engaged to superintend the construction of, certain substantial and material defects, and deficiencies both in reference to material used and workmanship, the design and execution of which come within the purview of the duties of the superintending architect to correct as they were going on; and I think for that reason,

in view of the allegation here which is made in the plea, that we are entitled to the report as he made it.

"*The Court:* On the theory that it was his duty to have prevented this?

"*Mr. Fitzpatrick:* Yes, your honor. That is exactly what a superintending architect is supposed to do."

A further colloquy followed, but the court excluded the report. The report described with more or less detail upwards of 100 defects in the building which plaintiff had discovered. The claim of defendants is (we quote from brief):

"We contend that the trial court should have permitted it to go to the jury (1) because it was plaintiff's duty as superintending architect to see that the plans and specifications were complied with, and this report is his own confession that the building as built did not conform with such plans and specifications; and (2) because it was the jury's province to determine whether or not any or all of the items therein set forth were due to plaintiff's negligent superintendence and formed proper subject-matter of defendants' set-off or recoupment."

The reply of counsel for plaintiff to this contention is that defendants could have made themselves good by retaining a sufficient amount from the contract with Mr. Herman. We quote from brief:

"If the defendants have deducted the damages from the amounts remaining unpaid on the contract prices, or they, having the opportunity given by the architect by his refusing estimates and making an inspection and report showing the amounts to be deducted, did not take advantage of such opportunity, but chose to pay nevertheless, can it be said that they have suffered any loss which was not made good or have any right of action against plaintiff where their loss came from their own negligence in paying off the contractor? The refusal of the admission in evidence of Exhibit 74 was at the worst a harmless error. Defendant suffered nothing, even if technically the report was admissible, as at best the report would only prove the existence of defects in the building for which defendants already had received compensation, or, if not, the lack of compensation came from their own acts

in paying off when they had knowledge of the defects and against the wish and warnings of plaintiff."

To this argument defendants reply, first, that they are entitled to have the building for which they had contracted and which they would have if plaintiff had properly superintended its erection; second, that they have been obliged to pay so much for liens for material that it more than ate up anything they failed to pay the contractor; and, third, that they have a right to recoup from the architect for his negligence irrespective of their relations with the contractor.

This court has had occasion to define the duties of an architect. In an early case Justice COOLEY, speaking for the court said:

" The nature of the duties to be performed by a superintendent are such that it would be highly improper that he should be appointed or controlled by the contractor. He is to oversee the work by the contractor, and to exercise a *quasi* judicial authority in determining upon its suitableness and sufficiency under the contract; and this fact would seem to preclude all idea that he was to superintend for his employers his own work. The two positions of contractor and superintendent of the contractor's work are inconsistent, and it is no less than an absurdity to imply a contract on the part of the employers to pay him for accepting on their behalf his own work." *Friedland* v. *McNeil*, 33 Mich. 40, 42.

In a later Michigan case Mr. Justice GRANT wrote the opinion. *Chapel* v. *Clark*, 117 Mich. 638 (76 N. W. 62, 72 Am. St. Rep. 587). In this case the charge of the trial judge is approved as a correct statement of law. It reads as follows:

"A person who holds himself out to the public in a professional capacity holds himself to be possessed of average ability in such profession, and the law implies that he contracts with his employer (1) that he possesses that requisite degree of learning, skill and experience which is ordinarily possessed by the profession in the same art or service, and which is ordinarily regarded by the community, and by those conversant with that employment, as

necessary and sufficient to qualify him to engage in such business; (2) that he will use reasonable and ordinary care and diligence in the exercise of his skill, in the application of his knowledge, to accomplish the purpose for which he is employed; (3) in stipulating to exert his skill and apply his diligence and care, an architect, like other professional men, contracts to use his best judgment. If you shall find that the plaintiff was qualified to that degree which the law required him to be in his profession, then the question as to whether or not he did the work unskillfully is a question which you are to determine under the rule I have just given you. If he made any mistakes by which the defendant was damaged, and it was through negligence or from incapacity, he is liable for such alleged specific damages as you may find from the evidence grew out of such negligence or incapacity. If, from a mistake growing out of the exercise of his best judgment, he possessing the reasonable degree of learning, skill, and experience in his profession required by law or implied by law, then, in such case, he would not be liable for any damage resulting therefrom. A mistake in judgment does not excuse negligence or ignorance."

See 6 Cyc. pp. 45, 47. See, also, 1 Hudson on Contracts. pp. 54, 74; *Straus* v. *Buchman*, 96 App. Div. (N. Y.) 270 (89 N. Y. Supp. 226). We think the report was competent and material, and should have been admitted in evidence. We deem it unnecessary to discuss the other assignments of error, as what we have said will take care of those which have merit.

The case is reversed, and new trial ordered.

STEERE, MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.