JOHNSON v. O'NEILL.

1. CONTRACTS — BUILDING CONTRACT — EXTRAS — ALTERATIONS — ARCHITECTS.

Changes made in the plans of a building so as to contain more stores than the original plan and contract called for, at the instance and request of the owner, were correctly treated as extras, for which the architect could recover additional compensation.

2. EVIDENCE—CORRESPONDENCE—LETTERS—CONTRACTS.

On the trial of an architect's claim for services, letters of the plaintiff containing the statement that no charge would be made if the negotiations should fall through, were inadmissible, where the proposed alterations in plan were actually made and the negotiations did not fall through.

3. SAME—TRIAL.

Evidence, contradicted by defendants, that the architect employed a special engineer in the inspection of a heating plant, with the knowledge of defendants, raised an issue of fact as to plaintiff's claim for that amount.

4. SAME—PLASTERING—RECOUPMENT—HEATING.

    A claim of recoupment for defective plastering was properly denied, where the contract did not provide that the builder should furnish heat, and the defective condition resulted from the cold weather, the building being constructed in midwinter.

5. SAME—EVIDENCE—PAROL EVIDENCE RULE.

    And it was not erroneous to exclude evidence tending to show a parol contract relating to the furnishing of heat, since the contract was in writing.

6. SAME—ALTERATIONS IN PLAN.

    And evidence tending to show what the cost of a stairway as originally provided for would have been, if no alterations had been agreed upon, was properly excluded.

7. SAME—NEGLIGENCE.

    And when it was apparent that the reason for the failure of defendants' contractor to correct certain defects pointed out by the architect was that they had paid him in full and he had become insolvent, the architect could not be charged with the deficiencies and was entitled to recover his compensation notwithstanding them.

ON REHEARING.

SAME—CONTRACTS.

    The right of the plaintiff to recover for changes which were made in the original plans and which were agreed upon after the bids were received upon the plans, was the same whether or not the contract had been entered into with the contractor.

Error to Wayne; Van Zile, J. Submitted January 14, 1914. (Docket No. 70.) Decided July 25, 1914. Motion for rehearing denied January 29, 1915.

Assumpsit by Arland W. Johnson against John G. O'Neill and another for work, labor and services. Judgment for plaintiff. Defendants bring error. Affirmed.

*William G. Fitzpatrick* and *M. Hubert O'Brien* (*Joseph Kropidlowski*, of counsel), for appellants.

*J. Emmet Sullivan*, for appellee.

BROOKE, J. This case is now before the court for the second time. Reference is made to our former decision, 172 Mich. 334 (137 N. W. 713), where the matter in dispute is set forth. Plaintiff has again recovered a judgment, which defendants again review in this court by writ of error.

There are some 66 assignments of error, a part only of which are argued and relied upon in defendants' brief. The first item discussed is that of $262.50, claimed by plaintiff as an extra for changing the plans after the contract had been let. The record shows that after the contract had been let defendants desired changes to be made, so that the commercial building so-called would contain a larger number of stores and produce a greater rental. There would seem to be no good reason why plaintiff should not recover for this item, if, as he testified, the changes were made at the request of defendants, and after the contract for erection under the original plans had been entered into.

It is urged that reversible error was committed in the exclusion of Exhibits Nos. 49 and 71. These were letters, one from plaintiff to the Burt Amusement Company, containing the statement that no charge would be made for the plans, should the negotiations fall through, and the other from the Burt Amusement Company to one of the defendants, conveying the same information. Inasmuch as the negotiations did not fall through, but were finally consummated and resulted in the erection of a building, we are unable to see what bearing they had upon the matter in controversy.

Plaintiff was permitted to recover the sum of $47, alleged to have been paid by him for the services of a special engineer in the inspection of the heating plant. He testified that the engineer was employed by him with the knowledge and consent of defendants. While this was disputed, the question was one of fact for the determination of the jury.

Defendants' claim of set-off and recoupment included a claim that the ornamental plaster was improperly and defectively applied, so that much of it fell down at a later date. The specifications called for the use of metal lath. Wood lath was substituted (plaintiff claims) with the consent of defendants.

The record discloses that much of the damage to the plaster resulted from the fact that the building was not properly heated at the time the plaster was put in position. Defendants claimed it was not their duty to heat the building during construction. Herman, the contractor, did furnish some heat by the use of "salamanders;" but it was apparently insufficient to prevent damage. The learned trial judge charged that the duty to heat the building rested upon the owner, and that he could recover for no damage resulting from his failure to perform that duty. In this we think he was correct.

It is clear that the contractor was under no obligation, under his contract, to supply heat. The building was being erected in midwinter. Defendants had already leased it to the Burt Amusement Company, and it was desirable that it should be completed at the earliest possible moment. Not having, in the contract, provided that the builder should furnish the heat, we think the owners must be held to have assumed that duty.

Error is assigned upon the refusal of the court to permit the witness Herman to answer the following question: "What was the agreement in regard to furnishing heat?" The contract between defendants and Herman was in writing, and in evidence. The answer was properly excluded.

The floor of the auditorium was changed from one involving the use of steps to a gradual incline. This was done at the request of the lessee, and without objection on the part of the owner, who was present and

noted the change. Evidence as to what it would cost to put in a floor according to the original design was properly excluded.

Plaintiff, a resident of Toledo, Ohio, visited the building during construction about 20 times. Defendants contended that his failure to inspect the building more frequently resulted in the use of inferior materials, faulty construction, and omissions by the contractor. Plaintiff claimed that he advised defendants a "clerk of the works" would be necessary, and that one of the defendants agreed that he would act in that capacity. This was disputed. The question as to whether plaintiff had properly performed his duty as architect was fairly submitted, and was determined by the jury in plaintiff's favor.

Many assignments of error are based upon alleged errors in the court's charge. We have carefully read the charge, and while there appears to be some repetition, due perhaps to the giving of requests already covered in general language, we are of opinion that the basic questions in controversy were fairly submitted to the jury. Particular stress is laid upon that portion of the charge wherein the court instructed the jury that defendants could not recover under their plea of set-off and recoupment for any damages caused by their own negligence. The alleged negligence referred to by the court was the failure of defendants to furnish heat, and the payment by defendants to Herman of various sums upon the contract, without first obtaining an estimate from the plaintiff.

The exact circumstances under which these payments were made were in dispute; but the effect was that after Herman, the contractor, became insolvent, before the building was completed, there was no reserve in the hands of the owners with which to compel performance of the contract and the rectification of minor defects pointed out by the architect in his final

report.* If this condition arose through the fault of defendants, it is obvious that plaintiff should not be held responsible. It is, we think, clear that defendants were very anxious for the early completion of the building, and the course followed (perhaps with plaintiff's consent) was doubtless the result of such desire.

We think the portion of the charge of which complaint is made was warranted by the evidence. Upon a review of the entire record, we believe that plaintiff *substantially* performed his duties under his contract, and that defendants now possess and for the past eight years have enjoyed the fruits of his labor.

We find no reversible error, and the judgment is affirmed.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

### ON REHEARING.

PER CURIAM. An application for rehearing is made, based upon three grounds, but one of which requires attention. The opinion contains the following:

"The first item discussed is that of $262.50, claimed by plaintiff as an extra for changing the plans after the contract had been let. The record shows that after the contract had been let defendants desired changes to be made, so that the commercial building so-called would contain a larger number of stores and produce a greater rental. There would seem to be no good reason why plaintiff should not recover for this item, if, as he testified, the changes were made at the request of defendants, and after the contract for erection under the original plans had been entered into."

This statement was based upon the following testimony given by one of the defendants:

"All of these small plans and the change of the erection of the four stores in front and the old house from

(sheets) 1 to 7 were all furnished after the contracts were let."

And again:

"Changes were made in the plans after the contract with Herman was entered into by Mr. Johnson with my consent. These were the plans from 1 to 7. They were agreed upon, Mr. Johnson agreed to draw these plans; agreed to furnish these plans. Sheets 1 to 7 were plans for the building which I contracted for. I never agreed to any other plans except those there including 1 to 7."

It is true that plaintiff testified that the changes were made *or agreed to be made* after the bids were received upon the original plans, and that "it was upon the plans and specifications as changed after the bids were received, the contract was finally entered into with Mr. Herman."

Whether we accept one version of the facts or the other, it is clear that complete plans and specifications were prepared by plaintiff and bids were received thereon, after which changes were ordered. It would seem that, though the changed plans were not actually made until *after* the contract with Herman was entered into, they were agreed upon before.

In our view of the case it makes no difference whether the changes were in fact ordered and made after the bids were received on the original plans or after the contract was let to Herman.

The motion is denied.