MALCOMSON-HOUGHTEN CO. *v.* GREGORIAN BUILDING CO.

WADHAM *v.* GREGORIAN BUILDING CO.

MORTGAGES—BUILDING CONTRACT—AMOUNT DUE—DAMAGES—DELAY
—EXTRAS.

> In a suit by a building contractor to foreclose a mortgage given for the construction of a building, evidence examined, and *held,* that the owner's claim for $25 a day as stipulated damages for delay should be disallowed, and ,that the amount due the contractor as extras should be $7,711.56, instead of $5,899.82, as allowed by the court below.

Appeal from Wayne; Van Zile, J. Submitted April 19, 1916. (Docket No. 94.) Decided June 1, 1916. Rehearing denied September 27, 1916.

Bill by Malcomson-Houghten Company, the assignee of a part interest in a second mortgage given by Gregorian Building Company to George B. Wadham, Jr., to foreclose its interest against Gregorian Building Company, George B. Wadham, Jr., and others. George B. Wadham, Jr., filed a cross-bill to foreclose his remaining interest. From the decree entered both cross-complainant and cross-defendant appeal. Modified and affirmed.

*Lucking, Helfman, Lucking & Hanlon,* for cross-complainant George B. Wadham, Jr.

*Chamberlain, Denby, Webster & Kennedy (John B. Corliss* and *Arthur Webster,* of counsel), for cross-defendant Gregorian Building Company.

*Miller, Smith, Canfield, Paddock & Perry,* for defendant Detroit Savings Bank.

*Corliss, Leete & Moody,* for defendant Lottie Wolf Kendall.

STONE, C. J. This case is before us upon the appeal of George B. Wadham, Jr., cross-complainant, and the appeal of the Gregorian Building Company, cross-defendant. The grounds of their respective appeals will be stated later.

The case was heard at the circuit upon the evidence taken in open court, and the trial judge therefore had the benefit of seeing and hearing the witnesses and parties testify. There was great conflict in the evidence, which took a wide range. The questions involved are largely questions of fact. We have spent much time in examining the testimony and various exhibits offered at the hearing, and we are of opinion that the conclusion reached by the trial judge was correct upon the main questions involved in the case.

The trial judge filed a written opinion which was made the basis of the decree appealed from. For brevity we compile from that opinion the following statement of facts:

On the 18th day of January, 1911, Thomas Dillon was the owner of a lot on the corner of High and Park streets, in the city of Detroit, and Mrs. Lottie Wolf Kendall owned, adjoining it, 20 feet. Edwin W. Gregory was an architect, and George B. Wadham, Jr., was a contractor, and the two last-named parties had worked together on other jobs where Mr. Gregory had been the architect. By an agreement of January 18, 1911, the first three parties named agreed to acquire title to the property aforesaid, being 60 feet front on High street, and extending south to the alley in the rear of said property; also to erect or have erected an apartment building thereon six stories high to cost from $70,000 to $90,000, more or less. They agreed to pay, or cause to be paid, into a general fund, for the above-mentioned purpose, the following amounts:

| Thomas Dillon | $7,500 |
| Edwin W. Gregory | 5,000 |
| Lottie Wolf Kendall | 13,500 |

| Making a total of | $26,000 |

—and that the share or interest of the respective parties in the property should be the ratio of the amount each paid to the whole amount paid in; that a construction loan or loans should be made or secured for the entire cost of the building to be erected on the best terms to be secured, and that a corporation should be organized under the laws of this State, and shares of stock should be issued at the par value of $10 each; that said building should be what is known as an apartment building, to be rented as deemed best for the interest of the parties to the agreement. Plans were drawn by Gregory, and bids solicited. Finally a preliminary arrangement was entered into with George B. Wadham, Jr., the details of which were not arranged, but an incomplete understanding, which was to be put into a definite contract, was had between Gregory, the architect, who received bids for the work, and Wadham, as contractor.

One of the questions raised in the case is as to the contract entered into by Wadham and the owners on the 12th day of April, 1911. A contract in writing, signed by Wadham and approved by Gregory, as shown by correspondence, was submitted by Gregory to Mr. Dillon for his signature. At that time Mr. Dillon was in Florida. He did not sign the contract, and it was never signed by any of the owners of the property. Mr. Dillon remained in the South until the latter part of May, 1911. In the meantime, beginning about April 12th, work on the job, consisting of putting in the foundations, had been commenced by Wadham. This proposed contract of April 12th is referred to in the record as Exhibit A. We quote from the opinion:

"There is a clause in this submitted contract, Exhibit A, that is somewhat significant, as touching upon a question later discussed. In that paper, or submitted contract, George B. Wadham, Jr., is the party of the second part. It contains this clause:

" 'The said party of the second part does hereby, for himself, his heirs, executors, and administrators, covenant, promise, and agree that he shall and will, for the consideration hereinafter named, without unnecessary delay, furnish all material and perform all work necessary for the complete job, for the six-story brick apartment building to be erected on lots 55 and 56, located on the southeast corner of High and Park streets, for the said parties of the first part, according to plans, drawings, details, and specifications made or to be made by E. W. Gregory, architect, together with engineer's working drawings made by Avila Thomas, C. E., linen tracing and original copy of specifications, marked No. 1, are part of this contract, * * * for the sum of $108,477.00.'

"After the return of Dillon negotiations were going on, trying to determine the terms of the contract for erecting the building. Copies of proposed contracts were submitted by the parties, but no agreement was arrived at that was executed by all the parties until September 28, 1911, when Exhibit E was executed by the 'Gregorian Building Company,' E. W. Gregory, president, Thomas Dillon, treasurer, and George B. Wadham, Jr., contractor. [The company having been incorporated about June 15, 1911.] In this contract of September 28, 1911, there was this clause:

" 'Whereas, a preliminary agreement has heretofore existed between the parties hereto, in pursuance of which the contractor has progressed work and furnished materials; and whereas, the said owner has this day executed to said contractor a mortgage and note, bearing even date herewith, for the sum of $105,477.00 to secure the payment of the balance of the contract price of said building, said mortgage covering the land above described: Now, therefore, this agreement shall take the place of and stand in the stead and make void any and all other agreements between the parties hereto relating to the said apartments, whether said agreements are oral or written.'

"These stipulations, after the negotiations leading up to the making of the contract, it appears to me, settle conclusively the first question in this case.

"The contract of September 28, 1911, is the contract and the only contract material and binding upon the parties, and which must be followed in determining this case. That Wadham intended from the beginning to be a general contractor * * * is quite clear, when in the contract proposed by him, dated April 12th, he agreed to do all the work and furnish all the materials for the sum of $108,477. From the clause quoted from the contract it was apparent that Wadham understood from April 12, 1911, to the making of the contract of September 28, 1911, that he was the general contractor. Upon the execution of the contract of September 28, 1911, the Gregorian Company executed a mortgage and note to Wadham for $105,-477, which was put on record by Wadham; and $3,000 had been paid Wadham under the arrangement with Gregory to do the job for $108,477. This is an additional fact showing Wadham to be a general contractor.

"Wadham soon was in need of funds, and it was arranged that he might negotiate a loan on the property. He had difficulty in finding a satisfactory loan. Finally, through a Mr. Rooney, he was able to raise $60,000 on a mortgage to the Detroit Savings Bank. Upon executing this and a mortgage of $38,477 to Wadham to secure balance that might become due him if he finished the job, the first mortgage of $105,477 was discharged. The $60,000 mortgage was given to procure money, so far as it would go, to pay the subcontractors, and so it was regarded by the architect and the then president of the Gregorian Building Company, Mr. Gregory, and also Mr. Dillon, the treasurer. There was a very good reason for this; as it might save them from liens because of unpaid bills to some considerable extent. These mortgages were executed on December 29, 1911.

"The mortgage of $38,477 given Wadham to secure the balance that might be his due after expending the $60,000 obtained on the mortgage to the Detroit Savings Bank in carrying on the building contained this clause:

" 'This mortgage is given subject to the terms of a certain contract entered into by and between the parties hereto, dated the 28th day of September, A. D. 1911, for the erection of a

building upon the lands described herein. This mortgage shall be reduced in amounts by any obligation or liability of second party in connection with said building which shall be paid or agreed to be paid by first party, and it is agreed that said mortgage shall not be negotiated for a greater amount than is due the second party under said contract. This mortgage is given subject to a certain first mortgage for $60,000 to the Detroit Savings Bank of Detroit, Mich., of even date herewith.'

"Wadham's cross-bill, upon which the case is heard, is a bill to foreclose the mortgage given him on December 29, 1911, above mentioned. In his bill alleging other facts in connection with his claim the claim of the Detroit Savings Bank is not to be disturbed or brought in question in this case. All other claims set out in the original bill of Malcomson-Houghten Company, complainants, have been settled and adjusted by payment, and assignments to the Gregorian Building Company, or otherwise. So that the issue here is the claim of George B. Wadham, Jr., against the Gregorian Building Company for the amount due him upon his contract for building the apartment building in question. Wadham seeks to foreclose his mortgage of $38,477. This makes the issue in this case. The issue is defined by the terms of the contract of September 28, 1911, and the conditions of the mortgage for $38,477.

"By the terms of the contract of September 28, 1911, Wadham was to have the building completed March 10, 1912. Shortly prior to March 10, 1912, the Gregorian Building Company became urgent to have the work progress faster, claiming it was being neglected. On the 10th of March the work was not done. February 8, 1912, the Gregorian Company served a written notice upon Wadham that he had failed to carry out the provisions of his contract, wherein it is expressly stipulated that in case he fails to push the work the owners may take possession of and complete it, and charge the cost thereof to the contractor, Wadham. The company, however, did not enforce this right under the contract, and allowed the matter to run on until April 12, 1912, when it took possession of the building, put its own workmen on the building, and started to complete it. The foreman of the men

was a Mr. Smith. The building was not finished until about November 1, 1912. Some of the floors, however, were occupied and rented about the middle of October, and so the company is accepting the time as October 10, 1912, or 210 days after March 10th, the day fixed by the contract for its completion.

"By the contract it is provided that, if 'the contractor shall not complete his contract within the time specified, he shall pay the owners, as liquidated damages, the sum of $25.00 for each and every day during which said work shall remain unfinished and not completed, and not delivered after the date specified for its completion.' The building company also claims damages for bad work, especially in putting in, and plastering the partitions on certain of the floors. By way of offsetting any amounts claimed by the Gregorian Company, Wadham, the contractor, presents certain claims for extra work and for overcharges. The issue to be determined is: What amount is due Contractor Wadham on his contract of September 28, 1911?

"From the original contract price, $108,477, and whatever he is allowed for extra work, must be deducted payments made him by the company, and the subcontractor, for work and materials, for amounts in good faith expended in finishing the building according to the plans and specifications, the amount, if any, for delay in finishing the job, and the amount of damages, if any are allowed, for bad work upon the building. The amount found due is the amount secured by the mortgage of $38,477, and for which the contractor would be entitled to a decree of foreclosure.

"Extra Work Wadham.

"It is difficult to arrive at this from the fact that Wadham kept no books and has no data that is satisfactory. I have taken the claims made by Wadham and the account furnished by Mr. Taft, the accountant. The item of Wadham for hauling away dirt, $1,300, I have disallowed. The specifications direct that the dirt from the cellar shall be leveled up and sloped away on all sides from the walls of the building. It is observable that there was no room for dirt on the premises. Wadham in his first claim for extras did not claim it.

"The item for recording mortgage, $198 (mortgage tax), is disallowed. The item gravel and cement material for floors, $836, is disallowed, and the items $450, $767, $1,411.14, not charged, are disallowed. These items, added, amount to $4,962.14. Deducting from the total, as found by Mr. Taft on page 13 of his report, we have $1,000.64. The item of $547 for extra footings, being allowed by the company, is left. Now, this amount, $1,000.64, added to the contract price, $108,477, makes a total of $109,477.64, which the company was under obligations to Wadham to pay.

| From this amount must be deducted, viz.: | | |
|---|---|---|
| * * * ........................... | | $109,477.64 |
| Paid on contract .............. | $10,800.00 | |
| Amount paid subcontractors.... | 67,013.14 | |
| Material account, and this item includes Mrs. Kendall's note, $3,000 and interest, shown in the report of Mr. Taft....... | 19,265.13 | |
| Labor account ................ | 6,019.93 | |
| Unclassified labor and materials | 479.33 | |
| Making a total of.......... | $103,577.82 | $103,577.82 |
| | | $5,899.82 |

"Thus, the amount of deductions, $103,577.82, deducted from $109,477.64, leaves remaining $5,899.82, balance due Wadham. Nor, can I see my way clear to allow the claim for delay—$25 per day. In the beginning of the enterprise Wadham was kept under uncertain conditions for months, from the fore part of April until September 28th; he had no contract and no definite source for money supplies. Then during the building very many changes were made. All these things would delay and hinder the work.

"The decree will therefore be that there is due George B. Wadham, Jr., under his contract, the sum of $5,899.82. To secure this a decree in the nature of a foreclosure of the second mortgage may be entered."

The decree, as entered by the court below, allows this last-named sum to Wadham, with interest from

the date of the completion of said building on November 1, 1912, at six per cent. The final decree bears date January 30, 1915.

These appeals raise three questions for determination:

(1) Did the trial court deduct too much from the amount due Mr. Wadham under his mortgage? He claims that it did.

(2) Was the claim of the Gregorian Building Company for alleged defective walls, properly disallowed? The company claims that it should have been allowed.

(3) Was the penalty claimed by the company for alleged delay in the completion of the building properly rejected by the court? The company urges that it should have been allowed.

After the appeal a stipulation was made by the solicitors for the respective parties fixing the rights of Lottie Wolf Kendall and the Fidelity & Deposit Company of Maryland, assignee, and providing that the same shall not be disturbed by the decree of this court, which stipulation, it was provided, should be made a part of the bill of exceptions and record in the case.

It is not necessary for us to here elaborate upon the reasons which have led us to agree with the trial judge upon the principal questions in the case. Much might be said upon the subject, but we think they are sufficiently covered by the opinion which we have quoted from, except, perhaps, the damages for bad work on the building. The company contends that it is entitled to damages for defective walls. This claim was disallowed by the trial court, as we understand it, largely because the fault was that of the plastering contractor, who did his work under the direction of the architect in charge, who should have rejected the work. We agree with the court below that under the evidence the fault was more in the plastering than in the walls, and that Wadham should not be held for

fault in the plastering. We think, however, that Mr. Wadham was wrongfully charged with certain extras, and that he should have the amount due him increased in the following particulars: Various coal bills charged to him, $124.29. The specifications provided that the owner should furnish the coal for drying out the building. In *Johnson* v. *O'Neill*, 181 Mich. 326 (148 N. W. 364, 150 N. W. 835), it was held to be the duty of the owner to dry out the building in the absence of express understanding by the contractor to do this. Here, we think, the matter was covered by the specifications. The same may be said of the charge of $237 for temporary radiators for drying out the building. These two items amount to $361.29. We think the same may be said of the water tax of $43.95. We think also the charge of $225 for insurance was improperly made against Mr. Wadham. As we understand it, the specifications expressly provided that the owner should pay this insurance. For extra handrails we think Mr. Wadham should be credited in the sum of $356. Wooden rails were specified, and there is testimony that warrants us in holding that the ornamental rails which were used cost the above sum in excess of wooden ones. Ornamental passenger inclosures costing $528 have been, we think, improperly charged to Mr. Wadham. They are not called for or specified by the plans, and the elevator contract provided that the owner should furnish these inclosures. We see no reason for charging them to Mr. Wadham. The same is true of the extra marquise, $179, and extra electric lights amounting to $118.50. These items amount to $1,811.74, and should be added to the $5,899.82 allowed by the court below to Mr. Wadham, making a total of $7,711.56, which should be the amount awarded to Mr. Wadham at the date of the opinion below, to which should be added interest as provided for in the decree.

It is urged by counsel for the company that Wadham did not make claim for some of these items. He did claim that too many extras were charged to him, and his principal complaint was the amount allowed by the court in adopting Mr. Taft's statement. We do not think that it was necessary for Wadham to formally ask credit for items that should never have been charged to him.

No costs were allowed either party in the court below. The decree of the court below will be modified as above indicated, and in all other respects will be affirmed, with costs of this court to the cross-complainant against the defendant Gregorian Building Company to be taxed.

KUHN, OSTRANDER, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. BIRD, J., did not sit.