EARLY v. TUSSING.

1. ARBITRATION AND AWARD — CONTRACTS — DAMAGES — DELAY — BUILDING CONTRACTS.
   Under an arbitration contract submitting to the arbitrators questions relating to the performance of a contract for the construction of a building, and to questions of damage, labor or materials, the arbitrators obtained jurisdiction of the owner's claim for liquidated damages, for delay, although it was provided in the construction contract that only in case of a disagreement as to the decision of the architect, in regard to work added to or taken from the plans and specifications, should the questions be arbitrated; and although by express terms in the arbitration agreement the contract was made the sole basis of arbitration. .

2. SAME—DAMAGES.
   While it was competent for the parties to a construction or building agreement to stipulate for liquidated damages if the building should not be completed within the time fixed by the contract, the arbitrators could not apportion the damages between contractor and owner in accordance with the degree of blame for various delays, charging two-thirds of the damages to the contractors and the remainder to the owner.

3. SAME.
   Where the parties are mutually responsible for the delays because of which the building is not completed in time, the stipulation as to liquidated damages is annulled and, in the absence of some provision under which another date can be substituted, it cannot be revived.

Appeal from Ingham; Wiest, J.  Submitted November 19, 1913.  (Docket No. 26.)  Decided October 2, 1914.  Rehearing denied April 28, 1915.

Bill by Thomas Early and William Fitzpatrick against Daniel W. Tussing to review and set aside an award made by arbitrators.  From a decree for defendant, complainants appeal.  Reversed.

*McArthur & Dunnebacke,* for complainants.

*Cummins & Nichols (Rollin H. Person,* of counsel), for defendant.

McALVAY, C. J.   The bill in this case was filed by complainants against defendant to set aside a certain award made by arbitrators.   A hearing in the case resulted in a decree dismissing the bill of complaint. Complainants have appealed from such decree.

The statement of facts as presented in the brief of appellants is admitted by defendant to be "substantially correct as a history of the case, and probably as full in its recitals as is necessary to a general understanding of the controversy."   We take from complainants' statement such facts as we consider material for the purposes of this opinion.

This controversy arises out of a contract made and entered into between the parties to this suit September 25, 1909, supplemented by an appendix thereto, whereby on the part of complainants it was agreed under its terms, which provided certain exceptions, to construct upon a certain foundation ready to receive the iron and mason work a certain six-story business block upon a vacant lot at the northwest corner of Washington avenue and Ottawa street, in the city of Lansing, for an expressed consideration of $37,500.   Defendant first obtained a lease of these premises in June, 1907, and in the winter of 1908-09 finally concluded to construct a business block upon them.   The excavation for the basement was begun in March, 1909, and the foundation was completed in June or July following.   A contract for the sidewalk was entered into by defendant in May, 1909.   Another contract with a foundry company for the structural iron to be used in this building was also entered into by defendant in the same month.   The foregoing contracts having been already entered into or com-

pleted, on September 25, 1909, as already stated, the contract between these parties was entered into. It will be necessary to state but few of its details. The building was to be completed on or before May 30, 1910. Complainants were "to complete and have ready for occupancy not later than March 1, 1910, all of the mercantile rooms of the basement, first and second floors," which were parts of the building already leased to a mercantile firm to be ready for occupancy on that date. Concerning that portion of the building the contract contained the following agreement:

"It is further agreed that, should the contractors fail to finish the work of completing the storerooms aforesaid at the time agreed upon, they shall pay to or allow the owner by way of liquidated damages the sum of $25.00 *per diem* for each and every day thereafter the said works shall remain incomplete."

This is the only provision for liquidated damages provided for in the contract or any later agreement between the parties.

The original contract of September 25, 1909, contained no agreement to arbitrate. Such agreement was contained in an appendix thereto, and only related to the refusal of either party to "accept the arbitrators' decision in regard to the value of any works added [to] or omitted from the aforesaid plans and specifications."

Complainants' contract covered only the mason and carpenter work on this building. Certain material, equipment, and labor were expressly excluded, to wit, excavating basement and area, concrete retaining walls, structural iron, sidewalks, sidewalk lights, fire escapes, electric wiring, piping for compressed air, compressed air plant, gas-fitting, plumbing, steam pipes, and radiators, elevators, and machinery thereof, and the tables, counters, and shelving for the

store. All of the above-enumerated material, equipment, and labor were to be furnished by defendant. Complainants were to place and imbed in concrete the iron bases for the columns in basement and erect the structural iron for the building; the first installment of this iron to be delivered at the premises for the use of complainants on or before September 29, 1909, and the balance as required by them. Complainants entered upon the construction of the building immediately after the contract was signed. On October 2d following it is admitted that the work of construction was suspended. Defendant claims that complainants stopped work because he refused to give a bond which they arbitrarily required. Complainants contend that the work stopped because of the default of defendant relative to furnishing necessary structural iron as agreed.

Defendant conceded in the case that on January 17th, during the construction of the building, a storm sewer, or drain, on Ottawa street burst at a point on the south side of, and opposite, the building, flooding the entire basement. It is also conceded that the building was not completed within the time fixed by the contract either as to the mercantile apartments or in its entirety. Complainants contend that, notwithstanding the delays which occurred, the walls were up and the building under roof within three days of the time fixed by the contract, and that the mercantile floors were ready for occupancy the first week in June, 1910.

On the contrary, defendant insists that the building was not completed until August 1st. After the building was completed complainants asked for a settlement and payment of a balance due, and after conferences between the parties had in August, September, and October, the parties, being unable to agree, although they had adjusted most of their differences, finally on November 4, 1910, agreed to and

executed the following agreement to submit to arbitration:

"This agreement, between Thomas Early and Wm. Fitzpatrick, contractors, party of the first part, and Daniel W. Tussing, party of the second part, all of Lansing, Michigan, made and entered into this 4th day of November, nineteen hundred and ten, witnesseth as follows: That whereas the said Early and Fitzpatrick are the parties of the first part under a contract with the said Daniel W. Tussing as second party, dated September 25th, 1909, in which they agreed to build what was termed therein the 'mason and carpenter jobs' for the mercantile and office building situated on lot six, block ninety-six, of the said city of Lansing, and known as the Tussing Building; and whereas differences of opinion have arisen between the parties thereto (being the same parties as are parties hereto), as to the amount due to said Early & Fitzpatrick under same contract:

"Now, therefore, it is covenanted and agreed by and between the parties hereto that the terms and conditions of the same contract dated September 25th, 1909, are held to be the true and correct contract under which the same building was erected; that the terrazza floors mentioned therein were by agreement of the parties not built; and that the contract price for furnishing materials therein required to be furnished and the labor was $30,500.00, plus the cost of joist as stated in said contract.

"It is further covenanted and agreed by and between the parties hereto that the said contract, in its true spirit and meaning shall be and is hereby unchanged; but it shall be, and is herein agreed that the claims of the parties hereto where disagreement has arisen upon questions involved in said contract of September 25th, 1909, shall be arbitrated by a committee of arbitration chosen according to the method agreed upon in said contract. Provided always that the arbitrators so chosen shall make the said contract of September 25th, 1909, as herein stated the basis of said arbitration.

"And it is agreed and covenanted by and between the said parties hereto that the findings of said committee so chosen shall be final and binding upon both

parties; and we agree to respect and defend the findings of the said committee whether upon question of performance, damage, labor, or material.   [Seal.]
           "THOMAS EARLY.         [Seal.]
           "WILLIAM FITZPATRICK.    [Seal.]
           "DANIEL W. TUSSING.     [Seal.]"

Under this agreement the arbitrators were selected and undertook to perform their duties as such. On November 16th they made a further agreement that the award should be made not later than December 1, 1910, and also an agreement authorizing the court to immediately enter a judgment on the award according to the findings. On the same day they began to take proofs, which was continued until November 30th following. On December 1st a majority of the arbitrators made and signed their findings and award. On the same date, and before such award was made, these parties made and entered into an agreement in writing which was presented to the arbitrators, accepted by them, and made a part of their findings, and taken into consideration by them in determining their award. The following is the award, together with said agreement between the parties, which was made a part of it by the arbitrators:

          "LANSING, MICH., Dec. 1st, 1910.
"To THE CIRCUIT COURT FOR THE COUNTY OF INGHAM
    AND STATE OF MICHIGAN—*Greeting:*
  "The following is a schedule of findings by John C. French, Wm. E. Moore and John C. Schneider, a committee of arbitration in the case of Early & Fitzpatrick, contractors, plaintiff, and Daniel W. Tussing, owner, defendant, in settlement of matters in controversy under the contract for erecting the Tussing Building in the city of Lansing, Michigan.
  "These findings are rendered with the distinct understanding that all bills for labor and material which the said Early & Fitzpatrick owe for said building shall be fully and promptly satisfied and paid by them.
  "These findings are based on the contract between plaintiff and defendant, dated November 4th, 1910,

and supplied by agreement November 16th, 1910, which submitted this case with the understanding that all accounts of every kind have been amicably and satisfactorily adjusted as per statement of both parties hereto attached, except those items entered in the left-hand column of this schedule, which items have been submitted, as aforesaid, have received our careful consideration after an impartial hearing of all evidence offered by both sides and have been adjusted by us as per the following schedule, to be paid by the respective parties named as follows:

|  | To be Paid by Early & Fitzpatrick. | To be Paid by D. W. Tussing. |
|---|---|---|
| Other bills by John Toolen, $2.88. | $2 88 | ...... |
| Erecting elevator beam, $22.50... | 7 50 | $15 00 |
| Two wheelbarrows, $1.50........ | ........ | 1 50 |
| Five rolls asbestos, $12.60....... | 6 30 | 6 30 |
| Damaged plate glass, $31.90..... | ........ | ...... |
| Hatchway inclosure, $390.00..... | ........ | ...... |
| 150 days' delay in completing stores at $25.00 per day, as per contract Sept. 25, 1909........ | 2,625 00 | ...... |
| Basement ventilating fixtures.... | 5 00 | ...... |
| Transom ventilators ........... | 40 00 | ...... |
| For leveling floors.............. | ........ | ...... |
| Baseboards in elevator lobby..... | 9 75 | ...... |
| Brass stair rail................. | 12 00 | ...... |
| Stone sill and threshold......... | 10 00 | ...... |
| Early & Fitzpatrick's claim of damages ....................?. | ........ | ...... |
| Allowance by contract of $1.00 per square for 73 squares of roof, $73.00.................... | 73 00 | ...... |
| 8 kick plates for southeast doors. | 20 00 | ...... |
| Total.................... | $2,811 43 |  |

"The court is hereby instructed to issue judgment to Daniel W. Tussing for the amount of $695.53 which is the balance due the said Daniel W. Tussing, according to the findings of the undersigned committee of arbitration in the aforesaid case, including every item which under the contract aforesaid, the evidence in the case, and the plans and specifications, were sub-

jects under the articles of agreement by which the case was submitted to us, for our deliberation.

[Signed]    "JOHN C. FRENCH,
            "JOHN C. SCHNEIDER,
            " ................,
                          "Committee.

"To John C. French, Wm. E. Moore and John C. Schneider, board of arbitrators, of the account of Early & Fitzpatrick and Daniel W. Tussing, as submitted by the said Early & Fitzpatrick, contractors, and Daniel W. Tussing, owner of the Tussing Building, Lansing, Michigan, according to sworn articles of agreement entered into by the said parties and dated Nov. 4th, 1910.

"Appended hereto is a correct copy of a bill presented to Daniel W. Tussing by Early & Fitzpatrick, contractors for the Tussing Building, on October 10, 1910. This account totals $5,181.92. This account rendered by Early & Fitzpatrick was accepted by Daniel W. Tussing in its entirety, excepting such items only as had already been charged in D. B. Moon, the architect's account of extras on said building. This account of extras submitted by D. B. Moon was O. K.'d by the contractors; therefore the items of raised floors in closets, $24.00, cutting hole through second floor, $5.00, two windows in Dancer-Brogan's office balcony, $32.00, total, $61.00 (see page 4, D. B. Moon's account of extras, items checked in pencil at the right), had been included in D. B. Moon's extras and O. K.'d by contractors. These items which have been acceptably settled by Mr. Moon's bill for extras reduced the total Early & Fitzpatrick charge per bill of October 10, 1910, to $5,120.92. This $5,120.92, then, is the total amount charged against Tussing by bill submitted. Tussing adds to this $95.55, the contractor's price for laying 14,700 brick and furnishing the mortar at their price of $6.50 per M. This makes the total net charge by Early & Fitzpatrick, according to their original statement of the account and modification that the architect's account of extras O. K.'d by contractors, $5,216.47.

"Early & Fitzpatrick admitted credits against this total charge which were agreed to by both parties as follows:

182 Mich.—21.

Charge for 55 hrs. Dieterle's men, at 17½c.....                $9 62
59,577 old brick at $3.00 per M.................               178 73
$10,000 insurance, Feb. 1 to Aug. 1...........                 50 00
$5,000 insurance, March 1 to Aug. 1..........                  18 75
$5,000 insurance, May 1 to Aug. 1............                  12 50
$5,000 insurance, June 15 to Aug. 1..........                   6 25
Half March heat bill.........................                  54 02
Half April heat bill.........................                  18 26
Half May heat bill...........................                  19 38
Rikerd bill for all lumber used by contractors.             2,394 91
Hardware trim (O. K.'d by Tussing and Fitz-
  patrick) .................................                  334 04
John Toolen's bill, pump and fixtures........                  4 11
                                                            ─────────
    Total..................................                 $3,100 57
Original contractors' total charge corrected..              5,216 47
Total of the accepted credits................               3,100 57
                                                            ─────────

Balance due contractors on items of debit
  and credit as above entered, and exclud-
  ing all items upon which any controversy
  exists ..................................                 $2,115 90
"Dated, Dec. 1st, 1910.

"The foregoing amount, $2,115.90, as an accepted charge against Daniel W. Tussing, taken into an account by you with such items as in your judgment come under the contract and the evidence submitted, and in accordance with the articles of sworn agreement by which we the parties, submitted the case to you, will constitute the total final settlement of the account according to your findings.

"THOMAS EARLY,
"WILL FITZPATRICK,
                    "In copartnership.
"DANIEL W. TUSSING.
"Witness:  BERYL COOK."

The foregoing is but a very brief outline of the facts in this case, but we think it is sufficient. The record contains about 800 pages, containing pleadings, testimony, and numerous exhibits, from which we have attempted to reduce the statement of facts to its lowest terms.

These parties entered upon this arbitration and

practically concluded it before any attorneys were employed. Such part of the testimony and proceedings had before them as appear in the record were taken directly upon a typewriter as they occurred, and are made an exhibit in this case.

A careful examination of the pleadings and a reading of the entire record shows that on the part of appellants very many reasons were alleged and urged as grounds for vacating and setting aside this award. It would be practically impossible, and, we consider, unnecessary, to go into the details of all of these complaints, for the reason that most of them, not because under other conditions their relevancy and merit might not be necessarily considered in determining this case, but because the award made by these arbitrators eliminates them and reduces the questions necessarily involved to very narrow limits.

The first contention relied upon by appellants which we will consider is that the articles of submission to arbitration make the terms of the contract of September 25, 1909, the sole basis of the arbitration; that by the terms of such contract no arbitration was provided for upon any question except a disagreement as to the decisions of the architect in regard to the value of work added to or taken from the plans and specifications; and consequently that under such articles no question of liquidated damages on account of failure by the contractors to complete certain portions of the work within the specified time could be considered.

As far as the original contract with the appendix thereto are concerned, the contention of appellants is absolutely correct, but these parties voluntarily entered into this agreement to arbitrate independently of the original agreements of September 25, 1909, and which, although referring to and based upon such agreements, contain the following statement in its preamble:

"And whereas, differences of opinion have arisen between the parties thereto (being the same parties as are the parties hereto), as to the amount due to said Early & Fitzpatrick under same contract."

We find further among the covenants and agreements to the articles of submission, the following:

"And it is agreed and covenanted by and between the parties hereto that the findings of said committee so chosen shall be final and binding upon both parties; and we agree to respect and defend the findings of the said committee, whether upon question of performance, damage, labor, or material."

The liquidated damages provided for in the original contract in case of nonperformance by complainants were to be paid or be allowed to defendant; consequently a dispute "as to the amount due to complainants under the contract" would include the question of these liquidated damages. In the final clause of the contract above quoted the questions of performance and damage were included. Our opinion, therefore, is that under the articles of submission the question of liquidated damages was included. This is the important question in the case. From the record it appears that the basement rooms and first and second floors of the building, which were required to be completed by a certain date, being the only parts for the nonperformance of which liquidated damages were provided, were not so completed. On the part of defendant it was contended that this delay was of a duration of 150 days, all caused by the complainants.

The contention of complainants was that the first delay was caused by the nonfulfillment on the part of defendant of his express agreement to furnish the structural iron on a certain date and as required, and that the principal delay, which began January 17, 1910, was caused by the fault of defendant in excavating the area on the south side of the building so close to a defective storm sewer that it burst into the exca-

vation and flooded the entire basement with mud and water to a great depth, which, on account of the ensuing cold weather, became frozen so hard that it could not be removed, and created a damp condition which made impossible the plastering of the walls and completing the basement and mercantile floors any earlier.

Defendant admits that the direct cause of the flooding of the basement at this time was on account of his excavation, as stated, and the record so shows in his testimony; but he claims that, had the complainants theretofore pushed their work as they should have done, he would have had the area walls completed and thus prevented the flooding. Defendant's claim was that complainants alone caused a delay of 150 days after the 1st day of March, for which he was entitled to the liquidated damages of $25 a day. This question of liquidated damages for the nonperformance by complainants of their contract in this respect was taken into consideration by the arbitrators, and, as the award signed by a majority shows, they found "150 days' delay in completing store, at $25.00 per day, as per contract September 25th, 1909." An examination of this "schedule of findings" by a majority of the arbitrators shows that they undertook to, and did, in said schedule put down in a column all of the items they considered and passed upon, and in two columns opposite each item, which in the schedule had the following captions: "To be Paid by Early & Fitzpatrick," "To be Paid by D. W. Tussing,"—and set down under each caption the amounts of these items charged to each party to the arbitration. Under the item relative to the number of days' delay in completing the store, they charged to complainants for 105 days of such delay $25 per day, making the sum of $2,625. This was practically the entire amount charged against them in the award. It was included

with a few other small items charged against complainants, amounting to but $186.43. The total charges found against them was $2,811.43. From this amount the arbitrators deducted the sum of $2,115.90, being the amount agreed upon by the parties and accepted and acknowledged in writing by defendant as due and owing by him, and directed to be taken into account by the arbitrators. This left a balance in favor of defendant of $695.53, which the arbitrators awarded to him. For this amount the arbitrators instructed the court to enter judgment in favor of defendant. The award was filed December 2d, and on December 3d the court entered judgment thereon. This judgment was afterwards vacated on the ground of irregularities.

Following this, various proceedings were had in relation to the confirmation of the award until the filing of the bill in the instant case. We avoid any discussion of the charges and countercharges made in the briefs in this case as to the activity of defendant in drafting many papers relative to the arbitration proceedings and other matters, and also as to the conduct of the complainants and their testimony, for the reason, as stated in regard to some of the questions raised in the case, the court does not consider that they require any discussion.

As appears from what we have already stated, the crucial questions are whether these arbitrators apportioned the damage for delays, and, if so, whether such action can be sustained.

The record contains a large amount of testimony upon the subject of the delays in completing those portions of the work limited by the contract. As already stated, the testimony of defendant shows that his excavation was the proximate cause of flooding the basement, the freezing of which was the direct cause of a long delay of at least 8 weeks. His letter to com-

plaintants, one of the exhibits in the case, in referring to this, said "that certain unforeseen accidents, etc., made temporary modifications of this time limit necessary needs no consideration here, as we all understand that. *   *   * "

The two arbitrators who took part in the award have found that the completion of the store portions of the building was .delayed 150 days. They have charged two-thirds of such delay against complainants, which they have included in their final award against them. In law this amounts to an apportionment of these liquidated damages between these parties, and in effect a finding and determination that one-third of the time of delay was caused by the defendant.

It appearing from the record and from the award of the arbitrators that defendant was responsible in part for the delays in building this work by complainants, we must consider whether the apportionment of the damages made by the arbitrators can be sustained by this court.

The jurisdiction of a court in equity to consider and determine questions here involved is admitted by defendant. It is not disputed by either party but that this case falls well within that class of cases where parties may lawfully agree upon stipulated damages to be paid by a contractor in case of failure to complete the work contracted for by the date fixed. From our examination we are satisfied that the great weight of the authorities is in favor of the proposition that such damages for delays cannot be apportioned, and this rule has been applied both in courts of law and in equity. While the cases directly in point are not numerous, this rule of law has been recognized both in the courts of England and the United States.

We quote from an eminent English authority, as follows:

"Where the liquidated damages are stipulated for at so much per day or per week, there must be a definite date from which they are to run. If no such date is fixed by the contract, or if by the operation of intervening circumstances the date fixed by the contract has ceased to be operative, and there is no provision in the contract under which another date can be substituted, all right to recover the sum stipulated for as liquidated damages has been put an end to, because there is no date from which the penalties can run." 3 Halsbury's Laws of England, pp. 243-245, and cases cited in footnotes.

The learned author continues by saying that, where provisions are inserted in a contract in order to avoid destroying the right to liquidated damages by fixing a date, such right will remain. Cases coming within this class are readily distinguished from those where no such provisions are inserted, and they are clearly distinguished by the above author, as follows:

"The cases relating to release from the obligation to pay liquidated damages for delay in consequence of some delay caused by the employer seem to fall into three classes: (1) where a power to extend the time has been properly exercised; (2) where there was such a power, but it has not been properly exercised; and (3) where there was no such power."

After discussing the first class of cases, which is not applicable to this case, the author proceeds:

"The other two cases, where there is power to extend, but such power has not been exercised, and where there is no power to extend, may be considered together.

"In either of these cases the effect of delay caused by the employer is to set the time at large, and exonerate the builder from liquidated damages for delay, the general rule of law being that the performance of a condition is excused by obstruction on the part of the obligee."

Other English authorities are *Holme* v. *Guppy,* 3

M. & W. 387; *Dodd* v. *Churton,* L. R. 1 Q. B. (1897) 562.

The same rule has been applied by the United States courts, both Federal and State. *Mosler Safe Co.* v. *Safe Deposit Co.,* 199 N. Y. 479 (93 N. E. 81, 37 L. R. A. [N. S.] 363) ; *Jefferson Hotel Co.* v. *Brumbaugh,* 168 Fed. 867, 94 C. C. A. 279.

In *Mosler Safe Co.* v. *Safe Deposit Co., supra,* the court said:

"Where the parties are mutually responsible for the delays, because of which the date fixed by the contract for completion is past, the obligation for liquidated damages is annulled and, in the absence of some provision under which another date can be substituted, it cannot be revived."

These American cases above cited were most of them on the chancery side of the court, and were all cases relative to questions arising under building contracts. An examination of these cases shows that the same conditions prevail in some of them which occurred in the instant case. *Jefferson Hotel Co.* v. *Brumbaugh, supra.*

It will be remembered that complainants had a contract only for the mason and carpenter work of this building, while defendant undertook all the excavation, the construction of the area walls and sidewalk, and all other things necessary to complete the building. The complainants were entitled to all the time intervening between September 25th and March 1st in which to construct the parts agreed to be finished by that date, and any delay caused by defendant during those dates could not be attributed to complainants. Such an interference amounted to a breach of contract on his part, and by reason thereof defendant lost all right to recover liquidated damages for delays. The justice of the rule is apparent. It is founded both upon reason and authority. The con-

clusion and award of the arbitrators upon this proposition was a gross and palpable mistake of law, and cannot be sustained. The award must therefore be vacated and set aside:

During the hearing of this case the record shows counsellor for defendant stated in open court that in case this award was set aside complainants were entitled to a decree against defendant for the amount of $2,115.90, less $186.43, the amount of the small items allowed against the contractors by the arbitrators. This was the amount stipulated and agreed upon by and between the parties in their settlement of accounts.

In our opinion, complainants are entitled to a decree in this case for such amount. A decree will therefore be entered in this court vacating and setting aside the ward of the arbitrators and declaring that defendant is indebted to complainant for a balance due them on their contract in the sum of $1,929.47, with interest from December 1, 1910. The lien of complainants for that amount, together with interest and all costs, is declared to have attached to said building and the leasehold interest of defendant in and to the premises upon which it is located.

Said decree will further provide that such amount with interest and all costs be paid by defendant to complainants on or before six months from the date of such decree, and that in default thereof the interest of defendant in said building and premises shall be sold in like manner and form as in cases of sales upon foreclosure of mechanic's liens; complainants to recover against defendant all costs of both courts to be taxed.

BROOKE, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.