# STATE OF MICHIGAN

# COURT OF APPEALS

ABHE & SVBODA INC,

    Plaintiff-Appellant,

v

STATE OF MICHIGAN, DEPARTMENT OF
TRANSPORTATION, and MACKINAC BRIDGE
AUTHORITY,

    Defendants-Appellees.

UNPUBLISHED
August 29, 2017

No. 332489
Court of Claims
LC No. 15-000235-MK

Before: FORT HOOD, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff Abhe & Svboda, Inc (ASI) appeals by right the trial court's grant of summary disposition in favor of defendants. This claim arises out of plaintiff's tardy completion of a contract with defendant the Michigan Department of Transportation (MDOT) to clean and paint a portion of the Mackinac Bridge, for which tardiness defendants assessed liquidated damages against plaintiff. Plaintiff contends that, for various reasons, including dilatory behavior by defendants and environmental circumstances beyond its control, liquidated damages should not have been assessed in whole or in part. The trial court, relevant to this appeal, found that the liquidated damages were not an unenforceable penalty and that plaintiff had not made a proper request for an extension of time pursuant to the parties' contract. We affirm.

The contract was awarded on December 7, 2007, and work was to be completed by October 30, 2009. The contract specified liquidated damages in the amount of $3,000.00 a day for each calendar day by which completion of the project was delayed. The complaint does not explicitly state precisely when work was completed, but it was indisputably late, and MDOT assessed liquidated damages against ASI for the period from October 30, 2009, and August 5, 2011. Thus, plaintiff was assessed liquidated damages for 644 days' tardiness. Plaintiff contends that assessment of 515 of those days is improper, but alternately that the liquidated damages clause should not be permitted to apply to 362 days of winter shutdown during which it was impossible for MDOT to have any losses, or that the liquidated damages clause is completely void for failing to be a good-faith effort to estimate losses.

Plaintiff contends, more specifically, that "at least 56 days of delay" were due to MDOT's failure to approve a prerequisite to work in a timely manner. Plaintiff contends that an

-1-

additional 459 days of work were caused by site conditions being "substantially worse than what could have reasonably been anticipated," the performance of "stripe coating" "outside the scope of the contract (with the full knowledge and awareness of MDOT)," and the impossibility of performing work during the winter despite the contractual provision conditionally allowing such work. A "progress schedule" attached to the contract apparently anticipated "scaffold access" to run from February 19, 2008 through November 1, 2008, for the 2008 season, with an "Anticipated Winter Shutdown 2 November 2008 – 1 March 2009."

The contract also provided a mechanism for requesting an extension of time. Although defendants contend that the contract *proposal* specifically stated that no extension of time would be granted "due to the Contractor not attaining sufficient conditions to work," they tacitly concede, and it is in fact unambiguous, that the "Standard Specifications" incorporated into the contract *itself* also provide a mechanism for seeking an extension of time due to poor weather. Under Standard Specification 108.10, a contractor has 14 days "following the end of the delay" or "following the end of the calendar month in which the delay occurred" to make a request for an extension of time, depending on whether the delay was weather-related or for any other reason. Plaintiff contends that it and MDOT "engaged in numerous discussions throughout the project which led ASI to believe that MDOT would fairly and equitably address these issues at the end of the project;" and plaintiff specifically asked MDOT, in writing, by telephone, and in person, to waive the liquidated damages.

The trial court concluded that plaintiff had failed to comply with the contractually mandated processes for making claims, thereby waiving any right to relief; it concluded that it was therefore unnecessary to consider whether plaintiff's claims were timely under the Court of Claims Act. In particular, the trial court found that although ASI had requested that MDOT waive liquidated damages, it never requested an extension of time, and in any event MDOT had clearly denied any conceivable such request on November 9, 2011. The trial court also rejected plaintiff's argument that the liquidated damages were an unenforceable penalty because damages caused by delays to highway projects were essentially impossible to identify precisely, the contract anticipated work over the winter months, and the validity of liquidated damages could not be evaluated in hindsight. The trial court also concluded that even if there was no traffic on the bridge over winter, the project was not intrinsically one that halted while it was ongoing, so a clause ASI relied on to assert a 50% reduction in liquidated damages was inapplicable. The trial court therefore granted summary disposition in favor of defendants, and this appeal followed.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. A motion brought under MCR 2.116(C)(8) should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the non-moving party. *Id*. at 119. Only the pleadings may be considered when deciding a motion under MCR 2.116(C)(8). *Id*. at 119-120. The trial court correctly determined that under MCR 2.113(F), a contract attached to a pleading is deemed "part of" the pleading in a contract action. See *Liggett*

*Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003). Otherwise, by definition, the only "pleading" in this case is the complaint itself. See MCR 2.110(A). The trial court correctly observed that in addressing the other documents the parties had attached, it necessarily considered the instant summary disposition to be under MCR 2.116(C)(10). We therefore decline to address plaintiff's arguments to the extent they are premised on the motion having been decided under MCR 2.116(C)(8).

Defendants contend that plaintiff impermissibly expands the scope of its argument on appeal. We disagree. Issues presented to the trial court and pursued on appeal are preserved. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Appellate consideration is not precluded merely because a party makes a more sophisticated or more fully-developed argument on appeal than was made in the trial court. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). Most of what plaintiff argues on appeal was presented to the trial court. Defendants contend that plaintiff failed to preserve its argument that MDOT's contribution to the project's delay should preclude "*any* assessment of liquidated damages" (emphasis in original). However, a fair reading of plaintiff's complaint is that plaintiff seeks to avoid liquidated damages and have the liquidated damages clause declared inapplicable, as the trial court put it, "at least" to the extent of certain specified delays. Although plaintiff makes a more extensive argument on appeal, it is not a wholly novel issue. Other than, as noted, plaintiff's inapplicable arguments pertaining to MCR 2.116(C)(8), we consider them in their entirety.

As an initial matter, defendants argue that plaintiff's claim is barred because plaintiff failed to comply with the requisite limitations period under the Court of Claims Act, which is relevant even if this is technically styled as an equitable action. Plaintiff correctly notes that a claim "accrues" for purposes of MCL 600.6431(1) when administrative remedies have been exhausted, and in particular when a defendant "has finally rejected a contested claim in the last step of its claim procedure." *Oak Construction Co v Michigan*, 33 Mich App 561, 565-567; 190 NW2d 296 (1971). Defendants contend that plaintiff waived any right to relief by failing to comply with the proper procedures under the parties' contract, but that is a different and distinct issue. The evidence is that defendants afforded plaintiff a full administrative review, which came to a final conclusion on July 17, 2015. Therefore, irrespective of whether plaintiff's claim is waived under the contract, its claim *for purposes of the statute of limitations* accrued on July 17, 2015, well within the limitations period before plaintiff filed suit. The trial court correctly did not grant summary disposition on the basis of the statute of limitations.

We first address plaintiff's argument that the liquidated damages provision was an unenforceable penalty, making any assessment of liquidated damages impermissible. To some extent, plaintiff takes out of context the trial court's remark that it was "somewhat of a false premise" that "liquidated damages were assessed for the period Plaintiff did not work during the winter months." It appears that the trial court was attempting to make the point that liquidated damages were computed based on the total number of days by which the project was late rather than specifically targeting any particular time period. However, that misses the point plaintiff made. As noted in the statement of facts, the parties' "progress schedule" *explicitly* anticipated a "winter shutdown." Consequently, plaintiff argues, calculating liquidated damages that include dates when no work was expected to be performed anyway could not possibly be an honest attempt to guess what actual damages might occur. Plaintiff correctly points out that liquidated

damages must be an honest attempt to estimate damages that are not easily ascertainable with precision, rather than a penalty. See, e.g., *Curran v Williams*, 352 Mich 278; 89 NW2d 602 (1958).

However, what plaintiff fails to appreciate, and neither defendants nor the trial court seem to have managed to clearly articulate, is that the point is not whether defendants were damaged by some particular amount on some particular day because no work was done on that day. Rather, defendants' harm is derived from the *total delay*, rather than some particular harm ostensibly suffered *on* any particular day the project was pending. The implied logic behind plaintiff's argument would suggest that if it had simply taken a day off work in the middle of an ordinary week, defendants would have suffered some kind of harm irrespective of the timeliness of the entire project. In fact, the opposite is true: the liquidated damages clause reflects the parties' agreement that defendants would suffer harm if the project was incomplete after a certain date, irrespective of how or why it was incomplete. Defendants' proffered reasons of administrative overhead are not unreasonable, and plaintiff does not challenge the $3000.00 a day figure specifically. In other words, plaintiff's argument *also* misses the point.

There is simply no reason to conclude that the liquidated damages provision is a penalty. It is clearly based on the total delay; it is simply irrelevant whether plaintiff could or could not work during any part of the contract term. The trial court properly declined to hold the liquidated damages clause unenforceable.

Plaintiff contends in the alternative that defendants' own dilatory behavior precluded it from finishing the project on time. Plaintiff correctly points out that as a general matter, one party to a contract cannot preclude the other party from satisfying a condition without itself waiving that condition. See *Harbor Park Market Inc v Gronda*, 277 Mich App 126, 131-132; 743 NW2d 585 (2007). This principle extends in general to the imposition of liquidated damages where the party seeking to impose liquidated damages has contributed to the other party's failure that would otherwise trigger them. *Early v Tussing*, 182 Mich 314, 327-330; 148 NW 678 (1914); *Grand Rapids Asphalt Paving Co v City of Wyoming*, 29 Mich App 474, 481-483; 185 NW2d 591 (1971). Therefore, in theory, if defendants indeed contributed significantly to plaintiffs' failure to complete the project timely, for example if defendants unreasonably delayed their approval of plaintiff's scaffolding plan, that contribution would waive defendants' right to impose liquidated damages. Potentially, a "domino effect" could easily result from that delay and thus be at least partially responsible for the total delay.

However, although *Early* did not find the situation applicable in that case, it strongly implied that the situation might be different where the party imposing the liquidated damages had the power to extend the time for completion. See *Early*, 182 Mich at 328. As discussed, the contract here provided mechanisms for requesting deadline modifications based on weather-related or other delays. As *Early* notes, the rule it applied was relevant to cases where the power to extend existed but had not been properly exercised, and to cases where no such power to extend existed at all. *Id*. In contrast, if a contract permits an extension of time upon request, but no such request was made, *Early* implies that liquidated damages are not waived. In *Grand Rapids Asphalt Paving*, the parties' contract did contain a provision allowing extensions, but the trial court concluded that the defendant had through its actions waived the liquidated damages provision, and on appeal this Court found that neither party had strictly abided by the terms of

-4-

the contract. *Grand Rapids Asphalt Paving*, 29 Mich App at 476, 484. Logically, if defendants can contractually extend the time for performance, then causing a delay is not synonymous with causing an obstruction to performance unless defendants have improperly failed to grant an appropriate such extension.

The only specific delay plaintiff contends was directly caused by defendants was their dilatory approval of plaintiff's scaffolding plan, although as noted, the other delays might be "domino effect" consequences. However, unlike the situation in *Grand Rapids Asphalt Paving*, it does not appear that there is any allegation of defendants repeatedly tampering with the terms of the contract. See *Grand Rapids Asphalt Paving*, 29 Mich App at 478-481. Plaintiff also contends that defendants and their agents "engaged in numerous discussions throughout the project which led ASI to believe that MDOT would fairly and equitably address these issues at the end of the project." This assertion was not expanded on by either party or the trial court, but this assertion is vague and seems unlikely to rise to the level of conduct that would waive significant portions of the contract.

Presuming the delay in approving the scaffolding plan was, in fact, due to incompetence or misfeasance on the part of defendants, we think that it would have been unreasonable for defendants to have refused to grant an extension of time had it been sought. Under Standard Specification 108.10, a contractor has 14 days "following the end of the delay" or "following the end of the calendar month in which the delay occurred" to make a request for an extension of time, depending on whether the delay was weather-related or for any other reason. Plaintiff's claim that it did properly request an extension of time hinges on a single question: whether the "delay" refers to any specific and discrete impediment to ongoing work, or to the lateness of the entire project.

We conclude that "delay" refers to individual, specific, discrete impediments to ongoing work. Plaintiff contends that the "delay" ended when MDOT accepted the project as complete. However, the plain language of the Standard Specification contemplates multiple delays, and it appears to anticipate that they will occur during the term of the contact. Plaintiff's interpretation would make delays synonymous with late project completion. The only sensible reading is that each and every time any impediment to ongoing work occurs, a contractor seeking to extend time for completion of the project on the basis of such an impediment must make a request within 14 days after work resumes (or 14 days after the end of that calendar month, if the delay was caused by weather).

Leaving aside defendants' contention that nothing plaintiff submitted to it constituted a real request for an extension of time, plaintiff contends that it made requests for extensions of time on October 14, 2010, and November 2, 2011. Because plaintiff finished work entirely on August 5, 2011, the latter date is impossible to be a timely request. It is not clear what the exact timetable of work performed was; however, for the October 14, 2010, communication to have been timely as a request for an extension of time, some manner of work would have had to resume after a pause in the August, 2010, to October 14, 2010, timeframe. We have found no allegation or evidence to that effect in the record. It would, in any event, be untimely as a request based on any delay that occurred before then, including the delayed approval of the scaffolding plan.

It is therefore not necessary to attempt to parse whether a request to waive liquidated damages should, or could, be construed as a request for an extension of time. One of those communications *might* be timely for something, but in the absence of any articulated idea of what, there is no reason to overturn the trial court's decision. Because plaintiff did not make a timely request for an extension of time, defendants did not breach the contract by declining to grant any such request. Likewise, because there is no persuasive indication that defendants did not take the contract seriously, there is no reason to believe that defendants waived the liquidated damages provision.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause