BOARD OF EDUCATION OF SAULT STE. MARIE *v.* CHAUSSEE.

1. PRINCIPAL AND SURETY — BUILDING CONTRACT — ALTERATIONS — NOTICE—RELEASE OF SURETY.

   In an action by a school board on a bond for the construction of a public school building, failure of plaintiff to comply with a provision requiring notice to the surety in case alterations should cost more than $8,000, notice being expressly waived in case the amount was less than $8,000, *held*, not to release the surety.

2. APPEAL AND ERROR—EXTENSION OF TIME.

   A finding by the trial judge that in the agreement extending the time for the completion of the contract nothing was said with reference to claims for damages for delay to the contractor, *held*, justified by the record.

3. DAMAGES—LIQUIDATED DAMAGES—NOT TO BE APPORTIONED WHEN BOTH PARTIES IN DEFAULT.

   Where performance of a construction contract is prevented by the owner liquidated damages cannot be recovered, and where the delay is due to the fault of both parties the court will not attempt to apportion such damages.

4. SAME—WHEN OWNER ENTITLED TO LIQUIDATED DAMAGES.

   Where the delay in the construction was not due to the fault of either party, but to conditions arising during construction within the contemplation of the parties at

the time the contract was entered into, and for which
they made a reasonable extension of time, the owner was
entitled to liquidated damages for delay thereafter due
to the fault of the contractor.

5. SAME.
    The time for which liquidated damages was allowed, *held*,
    justified, although plaintiff had partial use of the building.

6. APPEAL AND ERROR—EVIDENCE—SUFFICIENCY.
    A finding that the delay was not caused by the neglect of
    plaintiff to furnish a sewer, supported by evidence, will
    not be interfered with.

7. PRINCIPAL AND SURETY—LIQUIDATED DAMAGES—ESTOPPEL.
    Where an arrangement whereby plaintiff took partial charge
    of the work was consented to by the surety, it cannot
    contend that it was thereby relieved from liability for
    liquidated damages.

8. DAMAGES—SUPERVISION.
    An allowance for supervision, specifically provided for in
    the contract, was properly allowed.

Error to Chippewa; Fead (Louis H.), J. Submitted
April 21, 1920. (Docket No. 49.) Decided June 7,
1920.

Assumpsit by the board of education of the city of
Sault Ste. Marie against Louis E. Chaussee, princi-
pal, and the Chicago Bonding & Surety Company,
surety, on a bond for the construction of a building.
Judgment for plaintiff. Defendant company brings
error. Affirmed.

*Flanders, Fawsett & Smart* and *M. M. Larmonth*,
for appellant.

*Warner & Sullivan*, for appellee.

SHARPE, J. This case was tried by the circuit judge
without a jury. We summarize the facts as found
by him. The defendant Chaussee, on July 1, 1915, en-
tered into a contract with plaintiff for the construc-

tion of a high school building and boiler house. The defendant company is the surety upon his general construction bond. The contract price was $106,863. This price was modified by additions, changes and omissions so as to amount to $118,259.95. The total amount plaintiff was required to pay to secure the completion of the work was $119,599.33. In this suit, the plaintiff seeks to recover the overpayment of $1,-339.38.

The contract provided for completion of the work by June 10, 1916. On March 27, 1916, the date of completion was extended by written agreement to August 1, 1916. The work was not completed until after January 8, 1917, but on December 2, 1916, the plaintiff, under a written agreement with Chaussee, but without notice to the bonding company, took possession of the second and third floors of the building and occupied the same for school purposes. Each was to pay a part of the expense of heating. Plaintiff took full possession on January 8, 1917, although there was still some work to be done. The agreement provided that the contractor should pay as liquidated damages $25 per day for each day after June 10, 1916, until the completion of the work and delivery of the building to plaintiff.

The plaintiff expended $187.95 for the services of Architect Chubb in auditing the accounts of the contractor with subcontractors and others in order to determine the status of his account with plaintiff. This service was performed at the request of the bonding company. It also expended $754.91 for the services of one Koehl as supervisor of the work from August 1st to November 8, 1916, and from January 8th to March 19, 1917, under instructions and directions of the architect in charge. Both of these items were audited and certified by the architect.

There was a considerable delay, owing to the neces-

sity of changing the plans and specifications of the foundation, due to unexpected soil conditions. Such changes accounted largely for the increased cost.

The trial judge concluded, as matter of law, that the defendant company was liable to plaintiff in the following amounts:

| | |
|---|---|
| For overpayments | $1,339.38 |
| For liquidated damages for delay | 3,450.00 |
| For Chubb's auditing | 187.95 |
| For Koehl's supervision | 754.91 |

He allowed to defendant for damages caused by the delay in furnishing modified plans for the foundation $690, and awarded judgment to plaintiff for the difference of $5,042.24 and interest thereon, in all $5,541.45. The findings will be further alluded to in consideration of the questions presented. The defendant bonding company has appealed.

1. It appears from the findings that, owing to changes and modifications in the plans, the contract price was increased nearly $12,000. The last paragraph of the bond reads as follows:

"It is also understood and agreed, that the surety hereto expressly waives whatever right it may have to be notified of any * * * additions, * * * under the terms of this contract, and also waives whatever right it may have to be notified of or to consent to any extension of time, for the performance of said contract, * * * and acknowledges itself to be bound for all * * * additions * * * and extensions of time, as though proper notice thereof had been given to it provided no additions, omissions or changes shall be ordered which may cost to exceed the sum of eight thousand dollars ($8,000.00) over and above or below the net contract price of one hundred and six thousand eight hundred and sixty-three dollars ($106,863.00) as mentioned in said attached contract."

The bonding company claims that the increase in the contract price of more than $8,000, without notice

to it, was such a violation of this provision in the bond as discharged it from liability. The plaintiff contends that the effect of this condition was simply to provide that, if such increase should exceed $8,000, notice must be given to the surety; notice, if the excess did not exceed $8,000, being expressly waived. No claim is made that the neglect to give such notice in itself relieved the surety.

The contract anticipated that changes and additions would probably be made. In the clause wherein the price is fixed, it is provided:

"The total amount of this contract, as above mentioned, is also subject to any and all further additions and omissions as before mentioned in this contract as may be so ordered by the owner or the architect during the progress of the work."

The trial judge, while expressing the opinion "that the bond is fairly susceptible of either construction," held that under the rule by which such instruments must be most strongly construed against the surety the construction given by plaintiff should apply.

The paragraph preceding the one in question ends with the usual concluding words in a bond: "Then this obligation to be void, otherwise to remain in full force." After the bond was thus completed in form, this paragraph was added. What was its purpose, and for whose benefit was it inserted? If the purpose was to release the surety in case the excess in the contract price should be more than $8,000, much simpler language would have sufficed and waiver of notice need not have been mentioned. But, if the plaintiff desired to obviate the necessity of giving notice of changes or additions which would exceed the contract price, its purpose is plain and easily understood. In it the surety waives the right to be notified of additions or extensions of time provided that such additions or changes shall not cost to exceed $8,000. Stripped

211—Mich.—5

of legal phraseology, it says that if the plaintiff shall make alterations in the plans to increase the cost by more than $8,000 it must notify the surety. Up to that amount, it waives all notice thereof.

Counsel for the surety company say:

"If plaintiff's contention is correct, the clause permitting additions and alterations in the original contract would leave the whole matter open so that the architect and owner could call for additions without limit and impose any liability upon the surety that it chose. It cannot be reasonably assumed that a surety company would undertake such risks."

Such reasoning but adds force to the suggestion already made that by a few apt words inserted in either the contract or bond the company could have limited its liability to the contract price unless it be given notice of and consent to changes which would cause any increase thereof. The absence of any such limitation in the contract or in the other parts of the bond but strengthens our conclusion that this paragraph was inserted for the benefit of the plaintiff and that defendant was not released by its violation. In view of the conclusion thus reached, we find it unnecessary to consider the authorities cited by counsel as to the rule of construction which should be followed.

2. It appears from the findings that soon after the work was begun it was discovered that, owing to the condition of the soil, wider footings would be required. This caused a delay of about two weeks. The 5th finding of fact, as amended, reads:

"5. On March 27, 1916, the claim of the contractor that he had been delayed in various ways were considered and a written extension of time to August 1, 1916, was given him to .complete the work. His request was for a month, whereas a month and twenty days were given him. In the discussion and consideration of the matter of an extension of time, nothing was said by the contractor, the plaintiff nor the archi-

tect with reference to claims for damages for delay to the contractor. No notice of the instrument extending the time was given to the defendant bonding company nor was its assent to the same ever secured."

Counsel for the defendant company proposed the following in lieu of this finding:

"On March 27, 1916, the various claims of the contractor for delays were considered and an extension of time to August 1, 1916, given to him to complete the work. His request was for a month and a month and twenty days were given him. In consideration of this extension of time, Chaussee agreed to waive any and all claims which he might have against the plaintiff for delays in the work occasioned by the act of the plaintiff. No notice of this agreement or settlement was given to the defendant bonding company, or was their assent to the same ever secured."

Its claim is thus stated by counsel:

"In the settlement of March 27, 1916, made without the consent of the bonding company, Chaussee released all claims for damages on account of delay, and this release operated to discharge the bonding company."

It is urged that the proofs show that the damages on account of the delay were compromised and settled between the plaintiff and Chaussee without the knowledge or consent of the surety, thereby releasing it.

The finding made by the trial judge is supported by the testimony of both Chaussee and Architect Chubb. The letter of the architect to Chaussee of March 27, 1916, accepted by him, may be said to support the proposed amendment. After due consideration, we conclude that the record justifies the finding as made. See *Hoffman* v. *Wilkie, etc., Co.*, 195 Mich. 487, and cases cited

3. Was the defendant company liable for liquidated damages for delay? The contract, as before stated, provides that—

"The contractor shall pay to the owner, as and for

liquidated damages, the sum of twenty-five dollars ($25.00) for each and every day expiring after said June 10, 1916, and before the completion and delivery of said entire work as aforesaid."

By agreement, the time for completion was extended to August 1, 1916. As to the cause of the delay the court found:

"Defendant Chaussee began work on the contract shortly after it was executed and finished excavating for the main building and put in some concrete forms, for the foundation about July 23d. The soil conditions were found to be too soft to support the building according to the original plans and the contractor was ordered to stop work. Further plans were prepared by the architect providing for wider footings."

Counsel for the defendant claim that this delay was due to "the fault of the owner in furnishing plans for the new foundation," and insist that "liquidated damages cannot be apportioned in a case where they are due in part to the fault of the owner." There is nothing in the findings, nor in any proposed finding, to indicate that the delay was due to any fault or neglect on the part of the plaintiff. The contract apparently anticipated just such a condition as did arise and provided for completion "within the aforesaid time (June 10, 1916) unless the time shall be extended in writing by the owner or architect." In the last paragraph of the bond, heretofore quoted, the surety expressly "waives whatever right it may have to be notified of or to consent to any extension of time."

We are in accord with the rule of law as stated by counsel that, when performance is prevented by the owner, liquidated damages cannot be recovered, and, where the delay is due to the fault of both parties, the court will not attempt to apportion such damages. *Early* v. *Tussing*, 182 Mich. 314; *Maurer* v. *School District*, 186 Mich. 223; *Malcomson-Houghten Co.* v. *Building Co.*, 191 Mich. 678; 17 C. J. pp. 964, 965.

We conclude, however, that the delay in the foundation work was not due to the fault of either party, but to conditions arising during construction within the contemplation of the parties at the time the contract was entered into, and for which they made provision by agreement that an extension of time should be granted. Such extension was granted in writing. As said in 17 C. J., *supra:*

"Although delay in completion of a contract has been caused by plaintiff through a requirement of extra work, a provision for liquidated damages may be enforced where a reasonable time has elapsed for defendant to complete the increased work, and by its own default it has failed to do so."

A reasonable extension of time was agreed upon. It is apparent that the delay beyond that time was due solely to the conduct and neglect of the contractor. As the contract provides that "said entire work shall be completed and delivered up to the owner in perfect condition and completion" and the written extension continued the liability for liquidated damages after August 1, 1916, and until "the final completion and delivery of said entire work," we think the time for which such damages was allowed was fully justified, notwithstanding plaintiff had the partial use of the building after December 2d.

4. Complaint is made of the finding that the delay was not caused by the neglect of the plaintiff to furnish a sewer to take care of the water. There was evidence to support this finding, and we do not feel called upon to interfere with it.

5. It is urged that an arrangement made about August 1, 1916, whereby the plaintiff took partial charge of the work, relieved the surety from liquidated damages. This arrangement was consented to by the surety, if not suggested by it, and it cannot be permitted to claim an advantage on account of it.

6. The allowance for supervision was but that provided for by the express language of the contract. It had nothing whatever to do with the provision relating to liquidated damages. It was an actual expense incurred by the board, specifically provided for, and we find no error in its allowance.

After a careful consideration of the questions presented and discussed by counsel, we feel constrained to hold that the findings of fact made and the conclusions of law reached by the trial judge were justified by the record.

The judgment is affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.