**JOHN WM. BROWN CO., INC. v. STATE EMPLOYEES' CREDIT UNION**

[231 N.C. App. 264 (2013)]

JOHN WM. BROWN CO., INC., Plaintiff
v.
STATE EMPLOYEES' CREDIT UNION, Defendant

No. COA13-388

Filed 3 December 2013

1. **Laches—bar to enforcement of settlement agreement—separate lawsuit—not applicable**

    The doctrine of laches was not applicable and did not bar enforcement of the settlement agreement by defendant (SECU) where plaintiff (JWBC) asserted laches not as a bar to the lawsuit, which JWBC itself filed against SECU, but as a bar to the enforcement of the agreement settling the lawsuit entered into between SECU and Great American Insurance Company (GAIC), which had supplied labor and material bonds. Moreover, the delay that JWBC claims resulted in prejudice was not the result of any act by SECU, but the failure of GAIC to exercise its assignment rights under the indemnity agreement. Nevertheless, assuming the doctrine of laches was applicable, the result in this case would not be different under the language in the agreement.

2. **Estoppel—equitable—enforcement of settlement agreement—act of third party**

    The doctrine of equitable estoppel did not bar the enforcement of a settlement agreement where the act complained of was not that of defendant (SECU), but the delay of Great American Insurance Company (GAIC), the bonding company, in asserting its right of assignment under an indemnity agreement. Moreover, the non-waiver provision in the Agreement of Indemnity explicitly reserved GAIC's right of assignment.

Appeal by plaintiff from order entered 11 January 2013 by Judge Paul Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 10 September 2013.

*Safran Law Offices, by Lindsey E. Powell, for plaintiff.*

*Bailey & Dixon, L.L.P., by David S. Wisz, for defendant.*

McCULLOUGH, Judge.

Plaintiff John Wm. Brown Co., Inc. ("JWBC") appeals from an order granting defendant State Employees' Credit Union's ("SECU") Motion to Approve and Enforce Settlement Agreement and Release. For the following reasons, we affirm.

## I. Background

This case arises out of JWBC's service as the general contractor for the construction of the SECU branch office on Poole Road in Raleigh, an LEED project.

JWBC and SECU entered into a Standard Form of Agreement Between Owner and Contractor (the "Contract") for JWBC to serve as the general contractor for the project on 18 January 2008. In accordance with the terms of the Contract and in connection with a preexisting Agreement of Indemnity under which JWBC and individuals agreed to indemnify Great American Insurance Company ("GAIC"), JWBC obtained both a Labor and Material Payment Bond and a Performance Bond from GAIC on 18 March 2008. Each bond covered the contract amount of $2,374,000.

After significant delays, a notice to proceed was issued and the project commenced in December 2008. Pursuant to the terms of the Contract, JWBC was required to achieve substantial completion of the project within 270 days of commencement. The project, however, was not completed on time.[1]

In January 2010, GAIC began receiving bond claims from subcontractors on the project who alleged they had not been paid by JWBC. GAIC made payments on these bond claims in excess of $900,000.

When JWBC and the individual indemnitors failed to indemnify GAIC in accordance with the Agreement of Indemnity, GAIC filed suit against JWBC and individual indemnitors for breach of Agreement of Indemnity in the Middle District of North Carolina on 2 September 2010 (the "Federal Court Action"). In the Federal Court Action, GAIC sought reimbursement of over $600,000 paid to subcontractors on the bond claims.[2]

---

1. JWBC and SECU dispute why the project was not timely completed.

2. The difference in the amount paid by GAIC on the bond claims and the amount sought in the Federal Court Action is the result of payments by SECU directly to GAIC.

On 28 April 2011, JWBC and SECU began communications regarding close-out of the project. In the course of these communications, JWBC submitted claims to SECU alleging SECU owed additional funds for change order work. By email on 21 July 2011, SECU acknowledged that it owed JWBC the remaining contract balance of $195,637 that it was holding as a retainage on the project; however, SECU denied that it owed any additional funds for change order work and advised JWBC that it felt it "already went above and beyond being fair" by not asserting over $60,000 in liquidated damages against JWBC for delays in completion of the project, paying over $200,000 in additional funds for change order work when JWBC substituted subcontractors, and by not seeking to back charge JWBC for extra work required for LEED certification. Thereafter, in accordance with the terms of a Non-Waiver and Preservation Agreement entered into by the parties in late August 2011, SECU paid the remaining contract balance of $197,637 directly to GAIC to reduce JWBC's liability under the Agreement of Indemnity. The parties' remaining claims and defenses were preserved.

Prior to the filing of the present action, SECU, JWBC, and GAIC met on several occasions to discuss resolution of all disputes amongst the parties. During the course of these meetings, SECU offered $100,000 to JWBC to settle all claims between them. JWBC, however, rejected the offer and filed this breach of contract action against SECU in Wake County Superior Court on 31 October 2011. In the complaint, JWBC sought compensation for "completed extra and/or change order work[,]" alleging that SECU had not remitted full payment for the project. SECU answered the complaint denying liability, asserting affirmative defenses, and counterclaiming for liquidated and compensatory damages in excess of $100,000.

After a year of discovery, continued settlement negotiations, and court-ordered mediation, SECU renewed its offer to settle the dispute for $100,000. At that time, GAIC exercised its assignment rights under the Agreement of Indemnity and unilaterally accepted the $100,000 settlement offer over JWBC's objection.

A written Settlement Agreement and Release (the "Agreement") was entered into by SECU and GAIC on 3 December 2012. On the same day, SECU filed a Motion to Approve and Enforce Settlement Agreement and Release in Wake County Superior Court. SECU's motion came on for hearing on 7 January 2013 before the Honorable Paul Ridgeway. On 11 January 2013, an order granting SECU's motion was entered. JWBC filed notice of appeal on 29 January 2012.

## II. Discussion

On appeal, JWBC contends the trial court erred in granting SECU's motion to approve and enforce the Agreement because the doctrines of laches and equitable estoppel bar the enforcement of the Agreement over its objection. We disagree.

### Standard of Review

A motion to approve and enforce a settlement agreement is treated as a motion for summary judgment when reviewed by this Court. *See Hardin v. KCS International, Inc.*, 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009). Therefore, we review the trial court's order *de novo* to determine if there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. *Litvak v. Smith*, 180 N.C. App. 202, 205-06, 636 S.E.2d 327, 329 (2006).

### Laches

**[1]** "Laches" is defined as "[t]he equitable doctrine by which a court denies relief to a claimant who has unreasonably delayed or been negligent in asserting the claim, when that delay or negligence has prejudiced the party against whom relief is sought." *Black's Law Dictionary* 879 7th ed. 1999). As this Court has repeatedly stated,

> To establish the affirmative defense of laches, our case law recognizes that 1) the doctrine applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of each case; however, the mere passage of time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*MMR Holdings, LLC v. City of Charlotte*, 148 N.C. App. 208, 209–10, 558 S.E.2d 197, 198 (2001).

In this case, JWBC argues the doctrine of laches applies to bar enforcement of the Agreement because GAIC, with SECU's express knowledge, sat on its right of assignment under the Agreement of Indemnity for over a year while litigation commenced. JWBC further

claims it was prejudiced as a result of GAIC's delay because it spent substantial amounts of time and money pursuing the litigation.

In support of its position, JWBC cites numerous cases to explain the doctrine of laches. Yet, we find the cases cited by JWBC distinguishable from the present case in two respects. First, in each of the cases cited by JWBC, the doctrine of laches was asserted as an affirmative defense to the filing of a lawsuit. *See e.g. Teachey v. Gurley*, 214 N.C. 288, 199 S.E. 83 (1938). In the present case, however, JWBC asserts the doctrine of laches not as a bar to the lawsuit, which JWBC itself filed against SECU, but as a bar to the enforcement of the Agreement settling the lawsuit entered into between SECU and GAIC. Second, the delay that JWBC claims resulted in prejudice was not the result of any act by SECU, but the failure of GAIC to exercise its assignment rights under the Agreement of Indemnity for over a year.

We have been unable to find any case where the doctrine of laches has been applied in a scenario similar to the one now before this Court. Given the unique posture in which the doctrine of laches arises and the fact that SECU was not the cause of the delay, we hold the doctrine of laches has no applicability in the present case and does not bar enforcement of the Agreement by SECU.

Nevertheless, assuming arguendo the doctrine of laches may be applied to preclude the exercise of a right of assignment by a third party in order to bar the enforcement of a settlement, the result in the present case would not be different. The language in the Agreement of Indemnity is clear, "[n]o failure or delay by [GAIC] to exercise any right, power or remedy provided pursuant to this Agreement shall impair or be construed to be a waiver of [GAIC's] ability or entitlement to exercise any other right, power, or remedy."

### Equitable Estoppel

[2] "Equitable estoppel" is defined as "[a] defensive doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way." *Black's Law Dictionary* 571 (7th ed. 1999). As this Court has recognized,

> [t]he essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the

other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.

*Parker v. Thompson-Arthur Paving Co.*, 100 N.C. App. 367, 370, 396 S.E.2d 626, 628-29 (1990).

Similar to its laches argument, JWBC argues the doctrine of equitable estoppel bars the enforcement of the Agreement between SECU and GAIC because GAIC was aware of SECU's settlement offer to JWBC but waited for over a year before it exercised its right of assignment and unilaterally accepted the offer. In the meantime, JWBC incurred the expenses of litigation. JWBC further argues SECU acquiesced and facilitated GAIC's shift in position to the detriment of JWBC and should not be able to benefit from GAIC's wrongful conduct.

For the same reasons the doctrine of laches is of no consequence in the present case, we hold the doctrine of equitable estoppel does not bar the enforcement of the Agreement by SECU. As noted above, the act complained of is not that of SECU, but the delay of GAIC in asserting its right of assignment under the Agreement of Indemnity. Moreover, the non-waiver provision in the Agreement of Indemnity explicitly reserves GAIC's right of assignment.

### III. Conclusion

For the reasons discussed above, we affirm the trial court's order granting SECU's motion to approve and enforce the Agreement. As the trial court held "[t]he proper forum for JWBC's arguments [concerning the exercise of GAIC's right to assignment under the Agreement of Indemnity] is in the [Federal Court Action.]" *See e.g. Bell BCI Co. v. Old Dominion Demolition Corp.*, 294 F. Supp. 2d 807, 814-15 (E.D. Va. 2003) (providing claims of a surety's bad faith in settlement should be asserted as a defense in the surety's action for indemnification).[3]

Affirmed.

Judges McGEE and DILLON concur.

---

3. We note the trial court explicitly reserved "the rights, claims, and and/or defenses of any party, including but not limited to JWBC, GAIC, and/or the individual [i]ndemnitors, in the Federal Court Action." Moreover, following entry of the trial court's order in this action, JWBC amended its pleadings in the Federal Court Action to assert claims against GAIC for breach of contract and breach of fiduciary duty.