RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GREAT AMERICAN INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

No. 15-2149

E.L. BAILEY & COMPANY, INC.; EDWARD L. BAILEY,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-13033—Arthur J. Tarnow, District Judge.

Argued: September 28, 2016

Decided and Filed: November 7, 2016

Before: GILMAN, GIBBONS, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Thomas D. Noonan, STRENGER & NOONAN, Bloomfield Hills, Michigan, for Appellants. Lawrence R. Moelmann, HINSHAW & CULBERTSON LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** Thomas D. Noonan, STRENGER & NOONAN, Bloomfield Hills, Michigan, Michael F. Smith, THE SMITH APPELLATE LAW FIRM, Washington, D.C., for Appellants. Lawrence R. Moelmann, Stephen R. Swofford, HINSHAW & CULBERTSON LLP, Chicago, Illinois, for Appellee.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge. The State of Michigan contracted with E.L. Bailey & Company, Inc., a general contractor, to construct a prison kitchen. After delays, Bailey and

the State sued each other for breach of contract in the Michigan Court of Claims.  As required by Michigan law, Bailey had obtained surety bonds guaranteeing its performance from Great American Insurance Company (GAIC) in exchange for which Bailey agreed to assign GAIC the right to settle claims related to the construction project if Bailey allegedly breached the construction contract.  Exercising this right, GAIC negotiated with the State to settle Bailey's claims without Bailey's knowledge.  GAIC then sought a declaratory judgment from the district court recognizing its right to settle.  The district court granted summary judgment to GAIC.  On appeal, Bailey's sole argument is that GAIC settled Bailey's claims against the State in bad faith.  Because Bailey presented insufficient evidence of bad faith, we AFFIRM.

## I.  BACKGROUND

### A.  Factual History

Bailey[1] and GAIC entered into a surety agreement (the Agreement) in 2006 under which GAIC would issue surety bonds on behalf of Bailey, as required by Michigan law for Bailey to contract with the State of Michigan.   In this three-way surety relationship, Bailey, the "principal," paid GAIC, the "surety," to provide bonds guaranteeing contract performance to the State, the "obligee" or "owner."  In September 2009, Bailey entered into a nearly $5,000,000 contract with the State to serve as the general contractor for the construction of a prison kitchen at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan (the Project).   In connection with this construction contract, GAIC provided a performance bond, guaranteeing performance of the contract work, and a payment bond, guaranteeing payments to subcontractors and suppliers.  Under the Agreement, Bailey agreed to indemnify GAIC for all payments or other expenses GAIC incurred due to either bond, and to pay upon demand collateral in an amount to be determined by GAIC.  In the event of an alleged breach of Bailey's contract with the State, its contracts with its subcontractors, or the Agreement itself, the Agreement assigned to GAIC all Bailey's rights "growing in any manner out of" its contract with the State, as well as all its

---

[1]Both E.L. Bailey & Company, Inc. and Edward L. Bailey, its president, are defendants.  When referring to the defendants' positions in court, this opinion refers to the defendants jointly as "Bailey."  In discussions of the factual history of this case, "Bailey" refers to E.L. Bailey & Company, Inc.

claims "against any party" and the resulting proceeds.  The Agreement further granted GAIC the right to settle any claim in connection with any related contract.

Under Bailey's contract with the State, if different stages of Project work were not complete after set numbers of days, the contract permitted the State to withhold liquidated damages of $1,000 per day.  Bailey and the State have disputed the Project's due dates, but the latest due date for what the contract referred to as "substantial completion" was April 2, 2011 (after multiple extensions agreed to by the State).  The contract required "final completion" sixty days later, which would have been June 1, 2011.  The State alleged in the Michigan Court of Claims that Bailey achieved substantial completion on April 4, 2012, and had not achieved final completion as of January 1, 2013.  Bailey argued that it achieved substantial completion on December 15, 2011.  Bailey never finalized completion, and GAIC later reached an agreement with the State to have another contractor complete the Project.

A State-appointed mediator reviewed the evidence submitted by both parties in August 2012 and found that substantial completion occurred on April 4, 2012, 368 days after the April 2, 2011 due date.  The mediator apportioned 278.5 days of this delay to Bailey and 89.5 days to the State.  In addition, the mediator noted that prior to this due date Bailey had requested a fourteen-week extension, but the State granted Bailey only an eight-week extension and did not pay Bailey for the additional six weeks.  The record and briefs contain no specific identification of the number of days for which the State withheld liquidated damages or for which Bailey was unpaid, except that Bailey agreed at the mediation hearing that it had been compensated through November 16, 2010.  It appears that the State withheld $1,000 per day for both the 368 days following the due date and for the six weeks (42 days) of ungranted extension time prior to the due date, for a total of 410 days.  This number nearly matches the $411,000 amount that the State, in email negotiations with GAIC, said it had withheld.

Bailey blames the Project's delays on the State and its architect/engineer, Byce & Associates.  Bailey alleges that Byce's design plans contained numerous defects that prevented construction progress until the State and Byce provided Bailey with viable alternative designs.  As its primary example, Bailey alleges that Byce's original design for the main power source for the new food service building was impossible to construct, and that after Bailey

notified Byce about the defects it took Byce and the State 344 days to provide a viable alternative. According to an expert consultant retained by Bailey to calculate its claims against the State, this redesign may have ultimately delayed the Project by 42 days. The State acknowledged in an email that the original design for the power source represented a "serious design flaw."

**B. Litigation History**

The procedural history of this case includes litigation before three courts, of which we recite only the details relevant to this decision. First, Bailey and the State brought claims against each other in the Michigan Court of Claims in October 2011. The Court of Claims stayed the case pending mediation, and in August 2012 the mediator recommended that the State offer Bailey $220,400.75 to resolve all claims. The State rejected the mediator's recommendation. The claims between Bailey and the State were later transferred to another mediation-like method of alternative dispute resolution called facilitation, scheduled for September 12, 2013. On September 11, GAIC's counsel informed Bailey's counsel that GAIC had agreed to a proposed settlement with the State, releasing Bailey's claims against the State with prejudice in exchange for the State paying GAIC $358,000, representing final payment under the construction contract. The State did not attend the following day's facilitation. Bailey alleges that GAIC had secretly negotiated with the State since February 2013, and that Bailey was unaware of the negotiations until the agreement had already been reached.

Second, some of Bailey's subcontractors brought claims in Washtenaw County Circuit Court against Bailey and against GAIC under the payment bond for amounts due for Project work. In April 2012, GAIC demanded $1.4 million in collateral from Bailey for these subcontractor claims. Bailey offered to pledge as collateral its accounts receivable, including its claims against the State, which GAIC rejected. In November 2013, GAIC reduced its demand for collateral to $653,998. Bailey never provided any collateral in response to either demand. GAIC ultimately settled the subcontractors' claims, paying out $645,287.55 and incurring over $260,000 in expenses and attorney's fees.

Third, GAIC brought this case in federal court in July 2012, seeking indemnification for Bailey's alleged breach of the Agreement by failing to provide collateral for the subcontractor claims.  GAIC amended its complaint in December 2014 to add a declaratory judgment claim regarding GAIC's right to settle Bailey's claims against the State.  Bailey's answer asserted bad faith as an affirmative defense.  GAIC moved for summary judgment on the declaratory judgment and indemnification claims, and Bailey responded by contesting GAIC's right to settle Bailey's claims against the State.  Although Bailey's response discussed its allegation that GAIC settled in bad faith, it argued that the bad faith issue was not ripe for review until the court determined whether GAIC had a right to settle Bailey's claims.  The district court granted summary judgment to GAIC, finding that GAIC had that right under the Agreement and awarding damages for the indemnification claim.  Despite Bailey's position that a bad faith defense was not yet ripe, the court considered and rejected Bailey's bad faith argument, finding that Bailey's argument was based only on its disagreement with the settlement amount.  Bailey timely appealed, contesting only the bad faith finding.

## II.  ANALYSIS

We review grants of summary judgment de novo.  *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).  "Summary judgment is appropriate only when the evidence, taken in the light most favorable to the nonmoving party, establishes that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* (citing Fed. R. Civ. P. 56(c)).

As a federal court hearing a breach of contract claim based upon diversity jurisdiction, we apply the choice of law rules of the forum state, Michigan.  *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004).  The contract at issue here, the Agreement, has no choice-of-law provision, so Michigan courts would apply Michigan law unless an exception applied.  *Id.*  Since no exception applies, Michigan law governs the interpretation of the Agreement.

**A.  Waiver**

As a threshold matter, we must determine whether Bailey waived its bad faith argument. "[O]rdinarily an appellate court does not give consideration to issues not raised below." *Smoot v. United Transp. Union*, 246 F.3d 633, 648 n.7 (6th Cir. 2001) (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)).  The two main purposes of the waiver rule are to ease appellate review by ensuring that district courts consider issues first, and to prevent surprise to litigants. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

Waiver is a close question in this case, because neither party fully developed the facts or law on bad faith in the district court, and because Bailey expressly disclaimed the relevance of its bad faith argument to the district court's decision.  Nonetheless, GAIC had notice of Bailey's bad faith argument, and the district court considered it from the bench.  Bailey asserted bad faith in its affirmative defenses, and GAIC referenced Bailey's bad faith argument in its own summary judgment motion.  Although Bailey's response to the summary judgment motion argued that it was not yet appropriate to address the issue, Bailey put the court and GAIC on notice of its argument.  At the summary judgment hearing, the district court expressly considered bad faith, giving Bailey's counsel the opportunity to argue bad faith and GAIC's counsel an opportunity to respond with argument about its investigation into Bailey's claims.  The transcript thus shows that Bailey raised and argued, and GAIC had the opportunity to contest, Bailey's allegation that GAIC had settled in bad faith.  The issue is therefore appropriate for appellate review.

**B.  Bad Faith**

### 1.  Proper Forum for Bailey's Bad Faith Argument

Bailey's confusion about the proper forum for its bad faith argument was reasonable given this case's unusual posture.  Fairness dictates that Bailey should have an opportunity to litigate its bad faith argument somewhere.  Exactly where and when bad faith can be raised by a party in Bailey's position involves two questions that are unanswered under Michigan law.

First, can bad faith be raised as a defense in a surety's declaratory judgment action regarding its right to settle claims involving the principal? Or must the principal wait until the surety brings an indemnification claim to recover its payout from the disputed settlement? Bailey relied on decisions from other jurisdictions to argue in the district court that it could not yet raise bad faith as a defense to GAIC's declaratory judgment claim. *See Bell BCI Co. v. Old Dominion Demolition Corp.*, 294 F. Supp. 2d 807, 815 (E.D. Va. 2003) (holding that a declaratory judgment action was "not the proper forum for [the principal] to make its 'bad faith' argument," which instead "is properly asserted as a defense to the Surety's claim against [the principal] for indemnification"); *accord Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312 (ARR)(ALC), 2010 WL 5437208, at *14 (E.D.N.Y. Dec. 17, 2010) (citing *Bell*), *aff'd sub nom. Safeco Ins. Co. of Am. v. Hirani/MES, JV*, 480 F. App'x 606, 608–09 (2d Cir. 2012). In both *Bell* and *Safeco*, the alleged bad faith of particular settlements was irrelevant to determining whether the surety agreements authorized the sureties to settle, and therefore those courts held off adjudication of bad faith until the sureties brought indemnification claims to recover the settlement payments.

This procedure makes sense in most cases challenging surety settlements, where the disputed settlement requires the surety to *make* a payment on the principal's behalf, for which the surety then seeks indemnification. The principal can argue bad faith as an affirmative defense in the follow-up indemnity action. In contrast, GAIC's settlement requires the State to pay GAIC, making a follow-up indemnity action by GAIC unnecessary with regard to the State's claim, potentially denying Bailey a forum to assert bad faith as an affirmative defense. Thus, *Bell* and *SafeCo* have limited applicability to this case.

Further complicating matters, GAIC did bring an indemnification claim here, and Bailey did raise bad faith as an affirmative defense. GAIC's indemnification claim, however, was for payments made to settle the subcontractors' claims, not Bailey's controversy with the State. This case thus presents the second open question of whether a court may adjudicate the bad faith of one settlement as a defense to an indemnity claim for payment of a separate settlement. In limited caselaw from other jurisdictions, courts have found it proper to adjudicate such bad faith allegations, at least if the two settlements arise from the same surety agreement. *See Gen. Ins.*

*Co. of Am. v. Mezzacappa Bros.*, No. 01-CV-7394 (FB), 2003 WL 22244964, at \*1, \*4, \*5 (E.D.N.Y. Oct. 1, 2003) (adjudicating whether the surety settled the principal's claims in bad faith, raised as a defense to a separate indemnification claim arising from the same construction project), *aff'd*, 110 F. App'x 183 (2d Cir. 2004); *cf. John Wm. Brown Co. v. State Emps.' Credit Union*, 752 S.E.2d 185, 187–88, 189 & n.3 (N.C. Ct. App. 2013) (instructing the principal to raise allegations that the surety settled the principal's claims in bad faith as a defense in the surety's federal court indemnity action seeking payments made under separate but related settlements with subcontractors). Simultaneously adjudicating issues surrounding separate settlements arising from the same construction project and governed by the same surety agreement is logical because the facts relate and payments may offset one another.

Ultimately, whether a principal can raise bad faith should depend on fairness: if there is not another, more appropriate forum where the principal can raise the issue, then the court should consider it in a declaratory judgment action. Adjudicating bad faith is especially appropriate in a case like Bailey's, where the declaratory judgment claim is already joined with an indemnification claim against the same principal, because payments might well offset one another. *See Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1316–17, 1318–20 (S.D. Fla. 2008) (adjudicating bad faith in a surety's action seeking both indemnification and a declaratory judgment regarding the right to release the principal's claims). In this case, in fact, the district court made the amount of the damages award for GAIC's indemnification claim explicitly dependent on the final value of GAIC's settlement with the State. Given this analysis and the limited caselaw available, Bailey's bad faith argument was not premature and the district court did not err by considering it.

### 2. Surety's Duty of Good Faith under Michigan Law

"Michigan law infers a duty of good faith in every contract, which a party may breach by performing in bad faith."[2] *Travelers Cas. & Sur. Co. of Am. v. J.O.A. Constr. Co.*, 479 F. App'x 684, 689–90 (6th Cir. 2012). "But, as an affirmative defense, Appellants bore the burden of

---

[2]Bailey also argues that the Agreement expressly imposes a duty of good faith, but this argument misreads the Agreement. The Agreement permits GAIC to charge Bailey only for "disbursements made by the Surety in good faith," but that term applies only to payments like those GAIC made to Bailey's subcontractors, not to GAIC's decisions about settlement. Bailey does not challenge the good faith of those payments.

pleading and substantiating the issue to place it in dispute." *Id.* at 690 (citing *State Auto. Mut. Ins. Co. v. Reschke*, No. 2:06–cv–15410, 2008 WL 4937971, at *6 (E.D. Mich. Nov. 14, 2008)). As in *Travelers* and *Reschke*, it was Bailey's burden to substantiate its affirmative defense of bad faith, not GAIC's burden to substantiate its good faith.

GAIC does not dispute that its settlement of Bailey's claims had to be done in good faith, but the parties do dispute the standard for establishing a surety's bad faith under Michigan law. The Agreement does not define the term "good faith," and "[u]nless otherwise defined, contractual language is given its plain and ordinary meaning." *Premier Ctr. of Canton, L.L.C. v. N. Am. Specialty Ins. Co.*, No. 297799, 2011 WL 5964611, at *4 (Mich. Ct. App. Nov. 29, 2011) (reviewing Michigan courts' definitions of "good faith" to interpret a good faith requirement in a surety agreement).

In interpreting a criminal statute, the Michigan Supreme Court noted that the term "'[g]ood faith' consistently has been deemed a standard measuring the state of mind and perception of the defendant—a measure of honest belief and intention." *People v. Downes*, 228 N.W.2d 212, 217 (Mich. 1975); *see also Miller v. Riverwood Recreation Ctr., Inc.*, 546 N.W.2d 684, 689 (Mich. Ct. App. 1996) ("'Good faith' has been defined as a standard measuring the state of mind, perceptions, honest beliefs, and intentions of the parties.").

Bailey relies most heavily on a Michigan Supreme Court opinion defining bad faith in the insurance context, *Commercial Union Insurance Co. v. Liberty Mutual Insurance Co.*, 393 N.W.2d 161 (Mich. 1986), where an insurance company was sued for rejecting a settlement offer allegedly in bad faith. *Commercial Union* defined bad faith as more than negligence but less than fraud, and provided the following definition for jury instructions in insurance cases: "arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." *Id.* at 164. *Commercial Union* continued:

> Good-faith denials, offers of compromise, or other honest errors of judgment are not sufficient to establish bad faith. Further, claims of bad faith cannot be based upon negligence or bad judgment, so long as the actions were made honestly and without concealment. However, because bad faith is a state of mind, there can be bad faith without actual dishonesty or fraud. If the insurer is motivated by selfish purpose or by a desire to protect its own interests at the expense of its insured's

interest, bad faith exists, even though the insurer's actions were not actually dishonest or fraudulent.

*Id.* (footnote omitted). In addition, *Commercial Union* listed twelve factors that trial courts may choose in their discretion to include in jury instructions on insurers' bad faith. *Id.* at 165–66.

*Commercial Union* discussed good faith in the context of an insurer-insured relationship, and its applicability to sureties is not clear. Although the Michigan Court of Appeals cited *Commercial Union*'s good faith standards in *Premier Center of Canton*, No. 297799, 2011 WL 5964611, at *4, a surety case, insurance is not identical to suretyship. Unlike the two-way relationship of insurance, suretyship is a three-way relationship where the principal contracts with the surety to provide bonds that protect the obligee (the owner of the project), not the principal. It is the obligee of a surety, not the principal, who is analogous to the insured of an insurer. Therefore, the Southern District of Ohio held that "while a surety owes a duty of good faith to the obligee, a surety owes no such duty to the principal." *Int'l Fid. Ins. Co. v. Vimas Painting Co.*, No. 2:07-CV-298, 2008 WL 926577, at *5 (S.D. Ohio Apr. 3, 2008) (collecting cases on sureties owing a duty to obligees rather than principals). Even though surety agreements in Michigan do carry an implied duty of good faith, that duty of good faith may not incorporate all of the duties implied by *Commercial Union*'s language due to the differences between insurers' duties to their insured and sureties' duties to principals.

To the extent *Commercial Union* does apply to sureties, it does not deviate from the definitions in *Downes* and *Miller*. Like those cases, *Commercial Union* stated that "bad faith is a state of mind." 393 N.W.2d at 164. Although "there can be bad faith without actual dishonesty or fraud," such as when "the insurer is motivated by selfish purpose or by a desire to protect its own interests at the expense of its insured's interest," "offers of compromise" or "honest errors of judgment are not sufficient to establish bad faith." *Id.*

### 3. Evidence of GAIC's State of Mind

Bailey provided neither evidence about GAIC's state of mind nor any reason why GAIC's interest in settling would differ from Bailey's. There is no evidence that GAIC's settlement of Bailey's claims was undertaken with selfish purpose at Bailey's expense; rather,

GAIC and Bailey share an interest in securing the highest settlement possible from the State. Even if GAIC misunderstood Michigan law, leading it to miscalculate its liability and accept a lower settlement, "honest errors of judgment are not sufficient to establish bad faith." *Id.*

Furthermore, some evidence suggests that GAIC negotiated in good faith. The emails between GAIC and the State portray a genuinely adversarial negotiation, in which GAIC pushed for multiple settlement terms with which the State "strenuously," "strongly," and "adamantly disagree[d]." This negotiation secured $358,000, well more than the mediator's recommendation of $220,000. Without evidence of GAIC's state of mind or intentions, Bailey failed to establish the essence of the definition of bad faith in Michigan.

### 4. Concealment

Bailey argues that GAIC acted in bad faith by concealing its negotiations with the State until the latter two reached an agreement on the eve of the facilitation. GAIC does not admit but also does not contest that it did not communicate with Bailey about its negotiations before they were complete. A surety's concealment of its settlement negotiations does raise concerns. Settling a party's claim in secret, even when that claim has been assigned away by contract, deprives that party of the time to prepare objections and the opportunity to consider its options appropriately. By not informing Bailey until the day before its facilitation with the State, GAIC wasted Bailey's and its counsel's time and resources preparing for the facilitation. An unpublished Michigan appellate decision suggests that concealment is a factor to be considered in determining whether a surety settled in bad faith: "A claim of bad faith cannot be based upon negligence or bad judgment 'if the actions were made honestly and without concealment.'" *Premier Ctr. of Canton*, No. 297799, 2011 WL 5964611, at *4 (brackets omitted) (quoting *Miller*, 546 N.W.2d at 689 (quoting *Commercial Union*, 393 N.W.2d at 164)). Of the twelve factors *Commercial Union* listed for determining bad faith in the insurance context, the first factor (the only one that might apply to GAIC's conduct) is "failure to keep the insured fully informed of all developments in the claim or suit that could reasonably affect the interests of the insured." *Commercial Union*, 393 N.W.2d at 165. Depending on the facts, concealment might combine with other factors to establish a surety's bad faith.

Here, Bailey's only evidence regarding concealment is the date on which GAIC informed it of the settlement; no evidence substantiates its claim that GAIC had been in negotiations with the State for months. The emails between GAIC and the State show communication only during the week prior to reaching the agreement and GAIC's informing Bailey. At oral argument, GAIC's counsel stated that settlement negotiations did not begin earlier, as earlier discussions with the State had addressed nothing more than finding a replacement contractor for the Project. Bailey has presented no evidence to the contrary. These facts are not sufficient evidence of concealment to establish bad faith.

Even if Bailey did not know of GAIC's negotiations with the State until they were complete, Bailey had warning that GAIC might take control of these claims, just as GAIC had settled and paid the subcontractor claims. Bailey also had the opportunity to regain control of its claims by providing the collateral requested by GAIC. After initially demanding $1.4 million in collateral in April 2012, GAIC reduced its demand to $653,998 in November 2013, based on the expense GAIC had incurred as of that date. If Bailey had provided the requested collateral in the years before summary judgment in May 2015, it would have regained the capacity to negotiate for a higher settlement amount than GAIC reached. Bailey thus had both the notice and the opportunity to prevent an undesirable settlement, which undermines its argument that GAIC's alleged concealment constitutes bad faith.

### 5. GAIC's Alleged Failure to Investigate Michigan Law on Liquidated Damages

Bailey also argues that GAIC's failure to adequately investigate Bailey's claims against the State constitutes bad faith. Bailey has provided no direct evidence of GAIC's alleged failure to investigate, such as evidence regarding the investigatory steps GAIC took. Conclusory statements are not sufficient evidence to create an issue of fact precluding summary judgment. *See, e.g., Int'l Fid. Ins. Co. v. Podlucky*, No. 07-0235, 2008 WL 1829904, at *3 (W.D. Pa. Apr. 23, 2008) (indemnitors' statements of "belief" that the surety failed to properly investigate the claims and thus acted in bad faith were insufficient to raise an issue of material fact).

Bailey's argument that GAIC failed to sufficiently investigate stems from its interpretation of Michigan law on liquidated damages. In Bailey's view, liquidated damages

provisions are entirely unenforceable under Michigan law if the parties are mutually responsible for project delays.  Since the mediator attributed some delay to the State, Bailey argues that the State's withholding of any liquidated damages was improper, and thus Bailey had an unquestionable claim to $425,000 for wrongfully withheld liquidated damages.  GAIC questions the policy behind such a strict rule against apportioning liquidated damages, noting that one party's responsibility for one day of delay could nullify the other party's responsibility for unlimited delay.

Despite the potential unfairness of this rule, a series of century-old rulings by the Michigan Supreme Court clearly establish that "where the delay is due to the fault of both parties the court will not attempt to apportion [liquidated] damages."  *Bd. of Educ. v. Chaussee*, 177 N.W. 975, 977 (Mich. 1920) (citing *Early v. Tussing*, 148 N.W. 678, 683 (Mich. 1914)). The Michigan Court of Appeals has continued to apply this non-apportionment rule.  *See Grand Rapids Asphalt Paving Co. v. City of Wyoming*, 185 N.W.2d 591, 594–95 (Mich. Ct. App. 1971) (citing *Chaussee* and *Early*); *see also Davey Tree Expert Co. v. Site Dev. Inc.*, No. 313971, 2014 WL 2600566, at *4 (Mich. Ct. App. June 10, 2014) (citing *Grand Rapids* and rejecting liquidated damages without evidence that the other party was the sole cause of delay).

Both federal and other state courts, however, have been shifting away from the strict application of this rule.  One federal court in Michigan did not follow the rule when delay could be apportioned and liquidated damages were per diem, as they are under Bailey's contract with the State.  *In re Constr. Diversification, Inc.*, 36 B.R. 434, 437 (E.D. Mich. 1983) (holding that Michigan's non-apportionment rule does not apply where responsibility for discrete days can be apportioned under a per diem liquidated damages provision).  More recently, the Tenth Circuit reviewed the history of Kansas's non-apportionment rule and similar rules nationwide and held that it did not apply in circumstances similar to the present case, because "during the past 30 years" "a strong majority" of courts have adopted the "modern view and allow liquidated damages to be apportioned when faced with damages that are in fact divisible."  *Hutton Contracting Co., Inc. v. City of Coffeyville*, 487 F.3d 772, 785 (10th Cir. 2007).

In applying Michigan law, this court must follow the decisions of the Michigan Supreme Court, not federal courts that are applying Michigan law.  *See Savedoff v. Access Grp., Inc.*,

524 F.3d 754, 762 (6th Cir. 2008). It is unclear, however, whether the Michigan Supreme Court, if faced with the issue today, would maintain the strict non-apportionment rule in light of the modern view documented by the Tenth Circuit.

Even assuming that the Michigan Supreme Court would uphold the non-apportionment rule, however, Bailey's argument does not succeed. Bailey's argument about Michigan law is ultimately an argument that the settlement amount should have been higher. While a baseless settlement amount might be one indicator of bad faith in some circumstances, the district court was correct that simple disagreement with the monetary amount reached by settlement is generally insufficient to establish bad faith on its own. *See Premier Ctr. of Canton*, 2011 WL 5964611, at *5 ("[D]isagreement with the settlement decision does not establish that [the surety] acted in bad faith."). Bad faith primarily concerns a party's state of mind during the settlement process, not its results.

Another weakness of Bailey's liquidated damages claim is that it considers the Project delays only until the time of substantial completion (the time period analyzed by the mediator). But Bailey's contract with the State has two separate liquidated damages provisions: one for failure to achieve substantial completion on time, and another for failure to achieve final completion on time. Bailey never achieved final completion of the Project. The record contains no apportionment of delays after substantial completion on April 4, 2012. If Bailey were deemed fully responsible for delays after substantial completion, or if the Michigan Supreme Court permitted apportionment of damages, Bailey and GAIC would remain liable for ongoing liquidated damages for each day that GAIC did not settle. Bailey fails to account for this additional potential liability and its implications for the reasonableness of GAIC's settlement. Moreover, regardless of whether it is accurate, Bailey's proposed figure represents the *total* value of its claim for wrongfully withheld liquidated damages, and thus does not necessarily account for the benefits of entering settlement such as avoiding the time, expense, and uncertainty of further litigation.

Given all these factors, the settlement amount reached by GAIC does not indicate a failure to investigate Bailey's claims. In summary, Bailey did not provide sufficient evidence of

bad faith to preclude summary judgment, either due to concealment or the failure to investigate Michigan law.

### III. CONCLUSION

Bailey may be correct that it was treated poorly by the State during its work on the Project. This case, however, is governed by the rights Bailey assigned to GAIC to settle its claims, and the district court properly ruled that GAIC had the right to settle Bailey's claims against the State. Although GAIC's failure to inform Bailey of the settlement until the day before the facilitation is concerning, this fact alone does not defeat summary judgment, especially when GAIC shared Bailey's interest in securing the highest settlement possible and ultimately settled for more than the mediator recommended. Bailey's other arguments are unavailing. Therefore, the district court's grant of summary judgment is AFFIRMED.